IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION NO. |
| JOHN HOLLAND, WILLIAM MOORE, and EDMUNDO COTA, | 1:17-CR-00234-AT-CMS |
| Defendants. | |

## FIRST[1] REPORT AND RECOMMENDATION

The following motions are before the Court: Defendant John Holland's Motion to Dismiss 4 [Doc. 183], which has been adopted by Defendant William Moore and Defendant Edmundo Cota [Docs. 201, 209], Holland's Motion to Dismiss 6 [Doc. 186], which has been adopted by Cota [Doc. 214], and Holland's Motion to Dismiss 7 [Doc. 187], which also has been adopted by Cota [Doc. 217].

## I.    BACKGROUND

Defendants Holland, Moore, and Cota (collectively, "Defendants") are charged in a thirteen-count second superseding indictment ("Indictment") alleging that they took part in an illegal kickback scheme involving bribes for patient

---

[1]   As I begin drafting this Report and Recommendation ("R&R"), there are more than seventy pending motions in this case.  Although I do not intend to draft seventy R&Rs, I anticipate that this will be the first of many.

referrals. [Doc. 121, "Indictment"]. The Government alleges that in exchange for bribes, Cota's health clinic ("Clinica") funneled pregnant patients in need of childbirth services to hospitals run by Holland and Moore. [Id.]. Defendants allegedly accomplished this scheme by entering into sham contracts that disguised the kickbacks as payments for various services provided by Clinica to the hospitals. The specific charges are as follows:

> Count One (against all Defendants): conspiracy to defraud the United States and pay and receive bribes in connection with a federal health care program. [Indictment ¶¶ 40-64].

> Counts Two through Four (against Holland and Cota only): payment and receipt of bribes in connection with a federal health care program. [Id. ¶¶ 65-66].

> Counts Five through Nine (against all Defendants): wire fraud. [Id. ¶¶ 67-72].

> Counts Ten and Eleven (against Holland and Moore only): falsification of books and records. [Id. ¶¶ 73-74].

> Counts Twelve and Thirteen (against Holland and Moore only): major fraud against the United States. [Id. ¶¶ 75-79].

In the pending motions, Defendants argue that certain of the Government's theories contained in Count One should be dismissed, and that Counts Two through Four should be dismissed in their entirety.

## II.   <u>DISCUSSION</u>

Federal Rule of Criminal Procedure 12(b) permits a defendant to move for dismissal of a certain charge for "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).  In ruling on such a motion, "a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes."  <u>United States v. Sharpe</u>, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in the original) (reversing trial court's dismissal of an indictment charging the defendants with mail fraud and conspiracy to launder proceeds of mail fraud).  In ruling on a motion to dismiss, the allegations in the indictment are treated as true.  <u>See</u> <u>United States v. Fitapelli</u>, 786 F.2d 1461, 1463 (11th Cir. 1986) ("In judging the sufficiency of the indictment, the court must look to the allegations and, taking the allegations to be true, determine whether a criminal offense has been stated.").

At this stage in the litigation, the Court's role is limited to determining whether the indictment is legally sufficient.  A legally sufficient indictment must (1) present the essential elements of the charged offense, (2) notify the accused of the charges against him, and (3) enable the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.  <u>See</u> <u>United States v. Jordan</u>, 582 F.3d 1239, 1245 (11th Cir. 2009).  The Eleventh Circuit has repeatedly made the point that unlike the

procedural rules governing civil cases, the Federal Rules of Criminal Procedure contain no mechanism for a pre-trial determination of the sufficiency of the evidence, and motions seeking such relief in criminal cases are improper:

> There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. Moreover, this court is constitutionally barred from ruling on a hypothetical question. The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute.

U.S. v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam).

## A.   Count One

In Count One, the Government alleges that Defendants willfully and knowingly conspired to defraud the United States and to pay and receive bribes in connection with a federal health care program, in violation of 18 U.S.C. § 371. [Indictment ¶ 41]. Count One alleges that Cota's health clinic, Clinica, "attracted undocumented, pregnant Hispanic women who were potentially eligible for Medicaid and needed medical services related to childbirth[,]" and that Clinica charged these patients a fee for prenatal services at Clinica. [Id. ¶ 43]. In an effort for Tenet Hospitals to receive childbirth-related payments from Medicaid and Medicare, Defendants allegedly conspired to "steer" Clinica patients to Tenet Hospitals for childbirth. [Id. ¶ 44]. The Government alleges that to induce Clinica to "steer" those patients to Tenet Hospitals, the hospitals paid "bribes" to Clinica

4

that were disguised as contractual payments for various services such as translation services, Medicaid eligibility determination, educational classes, and birth-certificate services.  [Id. ¶¶ 45-47].  According to the Government, these contracts were a sham, and the services "in many instances" were "(a) not needed and not justifiable; (b) duplicative of services already being provided; (c) substandard or problematic; (d) not rendered at all; and (e) rendered by persons who were not qualified to perform them."  [Id. ¶ 48].  The Indictment alleges that the conspiracy was furthered through the commission of wire fraud and the falsification of books and records.  [Id. ¶¶ 49-52].  According to the Government, this scheme amounted to an unlawful conspiracy to make false statements in connection with a federal healthcare program in violation of 42 U.S.C. § 1320a-7b(b), the Anti-Kickback Statute ("AKS").  [Id. ¶ 41].

To determine whether the allegations in an indictment are sufficient, the first step is to examine the statutes that Defendants allegedly violated.  Here, the conspiracy statute referenced in Count One of the Indictment, 18 U.S.C. § 371, makes it unlawful for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose," provided that at least one of the persons does an act to effect the object of the conspiracy.  18 U.S.C. § 371.

5

The AKS provisions that Defendants allegedly conspired to violate are subsections (b)(1) and (b)(2):

**(b) Illegal remunerations**

(1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—

    (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

    (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

(2) whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

    (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

    (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service,

6

> or item for which payment may be made in whole or in
> part under a Federal health care program,

> shall be guilty of a felony and upon conviction thereof, shall be fined
> not more than $100,000 or imprisoned for not more than 10 years, or
> both.

42 U.S.C. § 1320a-7b.  Subsections (b)(1) and (b)(2) of the AKS work in tandem:

subsection (b)(1) criminalizes the soliciting or receiving of the kickback, while

subsection (b)(2) criminalizes the offering or paying of the kickback.

Defendants do not assert that Count One of the Indictment lacks detail

sufficient to apprise them of the charges or to defend against double jeopardy.

Rather, they argue that Count One should be dismissed because it fails to allege

that Clinica did not provide the contracted-for-services, that Clinica's fees for

services were above fair market value, or that the hospitals paid Clinica for any

services that were not actually provided.  [Doc. 183 at 5].[2]  While these arguments

may carry the day at trial, they are not a basis for pre-trial dismissal of Count One.

---

[2]  Defendants also seek to limit the Government's case by providing certain
facts not included in the Indictment and arguing that those facts show that no crime
has been committed.  [Doc. 183 at 7, 13-14].  This request is improper.  As the
parties are well aware, in ruling on a motion to dismiss, the Court is limited to
reviewing the face of the indictment, and the Federal Rules of Criminal Procedure
do not provide for a pre-trial determination of the sufficiency of the evidence.  See
Critzer, 951 F. 2d at 307; United States v. Rhame, No. 1:16-CR-67-SCJ-CMS,
2017 WL 5591273, at *7 (N.D. Ga. Nov. 20, 2017) (noting that a motion to

Count One of the Indictment is sufficient because it incorporates the elements of the offenses, is definite as to time, place, means, and motivation, and alleges the necessary scienter and jurisdictional components. Count One tracks the language of 18 U.S.C. § 371. [Indictment ¶ 41]. The Indictment also alleges a knowing and willful scheme to commit offenses against the United States over a discrete period of time, resulting in Tenet Hospitals allegedly receiving illegal kickbacks. [Id. ¶¶ 43-64]. Nothing more is required. These allegations amount to a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). Because Count One tracks the language of the relevant statutes and provides a statement of facts that give notice of the offense to the accused, the Government has sufficiently pled Count One. See Jordan, 582 F.3d at 1246.

**B.      Counts Two, Three, and Four**

In Counts Two through Four, the Indictment incorporates by reference the prior allegations from Count One set forth in Paragraphs 1 to 39 and 43 to 63. [Indictment ¶ 65]. Then, the Indictment alleges that Holland and Cota violated the AKS when they:

---

dismiss must be decided based on the facts alleged in the indictment itself, not outside facts the defendant intends to present at trial.).

8

did knowingly and willfully offer, pay, solicit, and receive remuneration, specifically bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicaid; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicaid[.]

[Id. ¶ 66].   The Indictment then identifies three checks written from Tenet Hospitals to Cota (one for each count) by check number, date, and amount.  [Id.].

Despite the fact that the Indictment tracks the statutory language and provides great detail regarding the three separate alleged violations, Defendants Holland and Cota nevertheless seek to dismiss these counts.  First, they argue that Counts Two through Four fail to state an offense because the Government has alleged no corrupt payments.  [Doc. 186].  Second, they argue that the AKS is unconstitutionally vague and overbroad as applied in this case.  [Doc. 187].  For the reasons that follow, I find each of these arguments unavailing.

**1.     Whether Counts Two through Four State an Offense**

To allege a violation of the AKS, the Indictment must allege facts that, if proven beyond a reasonable doubt at trial, establish that Holland and Cota: (1) knowingly and willfully; (2) offered or paid or solicited or received any remuneration, including bribes, directly or indirectly, covertly or overtly, in cash or

in kind; (3) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service; (4) for which payment could be made by a Federal health care program. 42 U.S.C. §§ 1320a-7b(b)(1) & (b)(2).

In the incorporated paragraphs setting out the conspiracy alleged in Count One, the Indictment alleges that Defendants conspired to violate the AKS. [Indictment ¶¶ 43-64]. Specifically, it alleges that Holland knew that Cota's patients at Clinica represented a potential revenue stream for Tenet Hospitals, that Holland intentionally conspired to have Cota and others steer these patients to Tenet Hospitals for medical services, and that Cota did so. [Id. ¶ 44]. The Indictment alleges that in exchange for Cota's agreement to steer Clinica patients to Tenet Hospitals for childbirth, Tenet Hospitals paid more than $12 million in bribes and other unlawful remuneration. [Id. ¶ 45]. According to the Indictment, the hospitals were able to recoup many times the amount of the bribes they paid by receiving payments from Medicaid and Medicare for medical services provided to the Clinica patients. [Id. ¶¶ 45, 58-61]. The Indictment alleges that to hide the true nature of the bribes, Defendants created "pre-textual" contracts for certain services that Clinica purportedly provided to Tenet Hospitals and that the true purpose of these sham contracts was to conceal the bribes and the illegality of their conduct. [Id. ¶¶ 46-49, 52, 54]. The Indictment alleges that the unlawful purpose behind the

bribes was "to induce Clinica's owners and operators to: (a) refer Clinica patients to the Tenet Hospitals; and (b) arrange for medical services related to childbirth for Clinica patients at Tenet Hospitals, all so that the Tenet Hospitals would receive payments from the Medicaid and Medicare DSH Programs." [Id. ¶ 45].  And the Indictment alleges that patients, in fact, were referred to Tenet Hospitals as Defendants intended, and that Medicaid and Medicare paid for the medical services.  [Id. ¶¶ 50-51, 53-54, 58-61].  According to the Indictment, "Tenet Hospitals, as a result of the conspiracy, fraudulently billed at least $400 million to the Georgia and South Carolina Medicaid Programs for medical services related to childbirth for the Clinica patients and their respective babies.  Tenet Hospitals fraudulently received at least $127 million on these claims." [Id. ¶ 58].

In their motions to dismiss, Holland and Cota argue that the Indictment fails to allege any corrupt payment or remuneration, because the contracts were actually for legitimate services offered for fair market value.  [Doc. 186 at 6-16].  But this argument ignores the mandate that in ruling on a motion to dismiss pursuant to Rule 12, the Court must accept the allegations in the Indictment as true.  See United States v. Salman, 378 F. 3d 1266, 1268-69 (11th Cir. 2004) (quoting Critzer, 951 F. 2d at 307).  Whether the Government will be able to prove all the elements of an AKS violation with respect to the three checks at issue in these

11

counts is a question that cannot be answered at this time.  Holland and Cota appear to have many ways they plan to attack the Government's contentions, to cast doubt on whether there was a scheme at all, and to show that the arrangement was a legitimate business deal.  But those arguments are for another day; they are for trial.  Applying the legal standard set out above concerning motions to dismiss in criminal cases, it is evident that the allegations in Counts Two through Four amount to a "plain, concise, and definite written statement of the essential facts" constituting three violations of the AKS.  Fed. R. Crim. P. 7(c)(1).  As with Count One, the Government has sufficiently pled Counts Two through Four, because those counts track the language of the relevant statutes and provide a statement of facts that give notice of the offense to the accused.  See Jordan, 582 F.3d at 1246.

### 2. Whether the AKS is unconstitutionally vague and overbroad

Holland and Cota also argue that allowing Counts Two through Four to proceed as currently drafted would amount to a violation of their right to due process under the United States Constitution because they did not receive fair warning that their conduct could be viewed as criminal in nature.  [Doc. 186 at 16-24; Doc. 187 at 2-13].  The basis for this argument is Holland and Cota's position that "Tenet had a valid contract with Cota under which Cota would provide Tenet with services deemed necessary to the functioning of a hospital."  [Doc. 187 at 2].

12

Again, while the evidence at trial may ultimately establish that this statement is correct, the Indictment clearly and unambiguously alleges to the contrary.

Holland and Cota's constitutional arguments suffer from the same deficiency as their facial attacks on the Indictment. Holland and Cota ask the Court to test the factual sufficiency of the Government's case pre-trial. They ignore the plain language of the AKS, which prohibits paying bribes for patient referrals for medical services paid for by federal health care programs. Contrary to Holland and Cota's arguments [Doc. 186 at 16-22], there is nothing vague or ambiguous about the allegations in the Indictment or the wording of the statute. See United States v. Starks, 157 F.3d 833, 839 (11th Cir. 1998) (stating "we see no reason to view the Anti-Kickback statute as vague"); United States v. Marthur, No. 2:11-cr-312-MMD-PAL, 2012 WL 4742833, at *13 (D. Nev. Sep. 13, 2012) (stating that the AKS "is not ambiguous about whether bribes, kickbacks, or rebates may be offered or paid to induce referrals of Medicare business.").

Holland and Cota argue that it is unfair to prosecute them for violations of the AKS because someone in their position "might reasonably have thought that the conduct alleged in the [Indictment] was exempt from the [AKS's] prohibition on remuneration for referrals, and instead were payments for legitimate services." [Doc. 187 at 6]. This argument, however, ignores the fact that one of the elements

that the Government must prove to show an AKS violation is that the defendant acted "knowingly and willfully."  42 U.S.C. §§ 1320a-7b(b)(1) & (b)(2).  Because the Indictment alleges that Holland and Cota knew that what they were doing was wrong and took steps to hide their crimes, their "fair warning" argument fails.  See Starks, 157 F.3d at 838 (noting that the AKS "is not a highly technical tax or financial regulation that poses a danger of ensnaring persons engaged in apparently innocent conduct.  Indeed, the giving or taking of kickbacks for medical referrals is hardly the sort of activity a person might expect to be legal . . . .").

## III.   CONCLUSION

For the reasons stated, I **RECOMMEND** that Defendants' motions to dismiss [Docs. 183, 186, 187, 201, 209, 214, 217] be **DENIED**.

**SO REPORTED AND RECOMMENDED**, this 1st day of June, 2018.

Catherine M. Salinas
United States Magistrate Judge

14