IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

JOHN HOLLAND, WILLIAM
MOORE, and EDMUNDO COTA,

       Defendants.

CRIMINAL CASE NO.

1:17-cr-00234-AT-CMS

## THIRD REPORT AND RECOMMENDATION

The following due process motions are before the Court: Defendant William Moore's Motion to Dismiss Based on Pre-Indictment Delay [Doc. 177]; Defendant John Holland's Motion to Dismiss-2 for Violation of Due Process [Doc. 181], which has been adopted by Defendants Moore and Edmundo Cota [Docs. 199, 205]; and Defendant Cota's Motion to Dismiss Based on Pre-Indictment Delay [Doc. 261]. Defendant Holland's Motion to Dismiss-1 for alleged violation of his constitutional right to a speedy trial [Doc. 180] is also before the Court.

For the reasons discussed below, I RECOMMEND that these motions be DENIED.

AO 72A
(Rev.8/82)

## I.    __BACKGROUND__[1]

At all relevant times, Tenet Healthcare Corporation ("Tenet") was a Nevada corporation with its principal executive offices located in Dallas, Texas. [Doc. 121, Second Superseding Indictment, ¶ 1]. Tenet owned for-profit hospitals across the United States, including hospitals located in Georgia and South Carolina ("Southern States Region"). [Id. ¶ 2]. Among the hospitals that Tenet owned and operated in the Southern States Region were three facilities in Georgia and one in South Carolina: (1) Atlanta Medical Center, located in Atlanta, Georgia ("AMC"); (2) North Fulton Medical Center, Inc., located in Roswell, Georgia ("North Fulton"); (3) Tenet Health System Spalding, Inc. d/b/a Spalding Regional Medical Center, located in Griffin, Georgia ("Spalding"); and (4) Hilton Head Health System, L.P., located on Hilton Head Island, South Carolina ("Hilton Head") (collectively, the "Tenet Hospitals"). [Id. ¶ 3].

The Government alleges that from 2000 to 2006, John Holland was the Chief Executive Officer of North Fulton. [Doc. 121 ¶ 4]. In 2006, Holland was promoted and became Senior Vice President of Operations for Tenet's Southern States Region.

---

[1] Unless otherwise indicated, the facts in this section were taken from various sources for background purposes only (including, but not limited to, the parties' briefs, previous motions, orders, the Initial Holland Indictment, and the Second Superseding Indictment) and do not constitute findings of fact by the Court.

He served in that capacity until approximately October 2013.  As Senior Vice President of Operations, Holland worked out of Tenet's executive offices in Dallas, Texas and was responsible for overseeing the operations of all Tenet hospitals in the Southern States Region, including the hospitals named above.  [Id.].

From 2001 through approximately February 2014, William Moore was the Chief Executive Officer of AMC.  [Doc. 121 ¶ 5].

From 1999 through September 2013, Edmundo Cota was President and/or Chief Executive Officer of Clinica de la Mama (and a successor entity) (collectively, "Clinica"), which held itself out as operating medical clinics providing prenatal care to predominantly undocumented Hispanic women in Georgia and South Carolina. [Doc. 121 ¶¶ 6-7].

The Government alleges that in 2006, Tenet entered into a civil settlement agreement with the United States.  The U.S. Department of Health and Human Services Office of Inspector General ("HHS-OIG") agreed not to exclude Tenet from participating in federal health care programs for the conduct covered by the settlement agreement provided that Tenet, among other things, enter into a Corporate Integrity Agreement ("CIA") with HHS-OIG and comply with its obligations for a period of five years.  [Doc. 121 ¶ 30].  The purpose of the CIA was to ensure that Tenet complied with federal health care program requirements, including the federal Anti-Kickback

Statute.  [Id. ¶ 31].  The CIA required that Tenet, among other things, strengthen its policies and procedures to ensure that each existing, new, or renewed arrangement or transaction involving the offer or payment of anything of value between Tenet and any actual or potential source of health care business or referrals to Tenet did not violate the federal Anti-Kickback Statute.  [Id. ¶ 33].

The Government alleges that the CIA required Tenet to submit certifications from its senior corporate management to HHS-OIG as part of Tenet's CIA annual reports for each year of the five-year CIA, which spanned from in or around September 2006 to in or around June 2012.  [Doc. 121 ¶¶ 32, 39].  Tenet's senior corporate management had to certify that, "[t]o the best of my knowledge, except as otherwise described in the applicable report, Tenet is in compliance with the requirements of the Federal health care program requirements and the obligations of this CIA."  [Id. ¶¶ 39, 52].

According to the Government, in 2009, the Department of Justice's Civil Division, Fraud Section, the U.S. Attorney's Office for the Middle District of Georgia, and later the Georgia Attorney General's Office opened civil investigations into the relationship between Tenet Hospitals and Clinica arising from a *qui tam* False Claims Act complaint that a relator filed in the Middle District of Georgia against Tenet and

Clinica.  [Doc. 259, United States' Consolidated Response in Opp'n to Defs.' Pretrial Motions, at 2 n.1].

In the summer of 2012, HHS-OIG subpoenaed documents from Tenet and others relating to the relationship between the Tenet Hospitals and Clinica.  [Id.].

The Government states that in the fall of 2012, a parallel criminal investigation was initiated by the U.S. Department of Justice, Criminal Division, Fraud Section, and the U.S. Attorney's Office for the Northern District of Georgia, together with the HHS-OIG and the FBI, to investigate whether the Tenet Hospitals paid illegal kickbacks and bribes to Clinica in exchange for Medicaid patient referrals to the Tenet Hospitals for labor and delivery services, in violation of the federal Anti-Kickback Statute.  [Doc. 259 at 2-3].

According to the Government, the parallel criminal and civil investigations were complicated and complex and had a number of moving parts.  In the summer of 2013, the State of Georgia intervened in the *qui tam* action filed in the Middle District of Georgia; the United States intervened in the same action in the winter of 2014.  [Doc. 259 at 2-3; Doc. 20 at 5; Doc. 177-1 at 3 n.1].  After motions to dismiss the complaints were denied, discovery in the civil case was stayed at the request of the United States, the State of Georgia, and the relator.  [Doc. 259 at 3].

In 2013, a grand jury was empanelled in the Northern District of Georgia. [Doc. 20 at 5]. According to Moore, he first learned that he had been identified as a target of the Government's investigation in January 2014. [Doc. 177-1, Moore's Motion to Dismiss Based on Pre-Indictment Delay, at 2-3]. In May 2014, the grand jury first summoned witnesses to testify and shortly thereafter subpoenaed documents from Tenet. [Id. at 3-4]. The Government states that on August 6, 2014, Tracey Cota (Defendant Cota's ex-wife and former co-owner/operator of Clinica) and Gary Lang (the former CEO of Walton Regional Medical Center) each pled guilty to a one-count criminal information charging a conspiracy to pay and receive kickbacks in exchange for Medicaid patient referrals, in violation of 18 U.S.C. § 371. [Doc. 259 at 3; Doc. 177-1 at 4].

According to the Government, after Tracey Cota and Lang pled guilty in August 2014, the United States continued to investigate this matter and the viability of charges against other individuals and entities. [Doc. 259 at 3-4]. As part of its investigation, the United States reviewed millions of pages of documents subpoenaed from Tenet and other third parties, analyzed state Medicaid claims data, Medicare cost reports, and financial records, interviewed hundreds of witnesses across the country, and took grand jury testimony. [Id. at 4]. According to Holland, the four-year investigation involved more than 450 witness interviews, the testimony of approximately 60 grand jury

6

witnesses, the production of two million documents totaling more than seven million pages, and more than 600 boxes of hard copy documents.  [Doc. 37 at 3].

In October 2016, the United States and Tenet finalized a global resolution of Tenet and its subsidiaries' respective criminal, civil, and administrative liability arising from the investigations.  [Doc. 20 at 6; Doc. 259 at 4].  According to the Government, the global resolution included the following:

- Guilty pleas by AMC and North Fulton Hospital to a one-count information charging a conspiracy to defraud the United States and pay and receive health care bribes and kickbacks, in violation of 18 U.S.C. § 371, and forfeiture money judgments totaling approximately $146 million, see United States v. Atlanta Medical Center, et al., No. 1:16-cr-350-AT, Doc. 1 (N.D. Ga. Oct. 2, 2016);

- A Non-Prosecution Agreement ("NPA") between DOJ's Criminal Division, Fraud Section, USAO NDGA, and Tenet HealthSystem Medical, Inc. ("THSM") requiring THSM and Tenet to, among other things, cooperate with DOJ's ongoing investigation and retain an independent compliance monitor for a term of three years; and

- A civil settlement agreement between Tenet, the United States, and the states of Georgia and South Carolina, requiring Tenet to pay $368 million.

- According to Holland, the civil settlement also included a non-prosecution agreement between Tenet and the United States, which contained at least three paragraphs describing Holland's alleged failure to disclose reportable events under the Corporate Integrity Agreement and false certifications, allegations which also appear in the Second Superseding Indictment in the instant case.

[Doc. 259 at 4; Doc. 20 at 6-8].

Three months later, on January 24, 2017, a grand jury in the Southern District of Florida returned an indictment against Defendant Holland. [Doc. 1, "Initial Holland Indictment"]. The Initial Holland Indictment alleged that from 2000 to 2013, Holland and co-conspirators engaged in an unlawful scheme-to-defraud through pretextual services contracts between Clinica and the Tenet Hospitals. [Doc. 1 ¶¶ 2-5, Count 1, ¶¶ 4, 5]. The Initial Holland Indictment alleged that during that thirteen-year time period, Holland and his co-conspirators caused Tenet to pay more than $12 million in bribes and other unlawful inducements to Clinica's owners and operators to induce them to refer Clinica patients to the Tenet Hospitals and arrange for services to be provided to Clinica patients and their newborns at the Tenet Hospitals so that the Tenet Hospitals could bill and receive payment from the Georgia and South Carolina Medicaid Programs and the Medicare Disproportionate Share ("DSH") Program for services provided to the Clinica patients and their newborns. [Doc. 1 at 10-11 ¶ 4]. The Initial Holland Indictment alleged venue in the Southern District of Florida based on the Boca Raton, Florida location of a Tenet billing center and the mailing of a certification by Tenet to HHS-OIG's office in Miami Lakes, Florida that relied on Holland's false certification that Tenet was in compliance with federal health care program requirements and its CIA obligations, when, in fact, Tenet was not in

compliance with the CIA.  [Id. at 9-10, ¶¶ 35, 36; Count 1 ¶ 15; Count 2 ¶ 5; Counts 3-4, ¶ 5].

On February 3, 2017, the United States district judge in Miami, Florida issued an order setting Holland's criminal case for trial in April 2017.  [Doc. 12].  On February 22, 2017, Holland filed a motion under Fed. R. Crim. P. 12(b) for a discretionary transfer of venue to the Northern District of Georgia and a motion to stay the proceedings in the Southern District of Florida until his motion to transfer venue was ruled upon, or, in the alternative, to extend his deadline for motions for 90 days. [Docs. 20, 22].  The Government opposed Holland's motions, arguing that the charges were properly venued in Florida because, among other reasons, the alleged false and fraudulent statements made and caused to be made by Holland (who was located in Texas) were contained in annual reports submitted by Tenet to the monitor of Tenet's Corporate Integrity Agreement with HHS-OIG in Florida.  [Doc. 31].  The Florida court agreed with the Government and denied Holland's motion to transfer venue. [Doc. 36].  Holland then filed a motion for reconsideration, which the Government again opposed.  [Doc. 40].

While the motion for reconsideration was pending, on March 28, 2017, a grand jury in the Southern District of Florida returned a nine-count superseding indictment,

adding five counts of wire fraud, in violation of 18 U.S.C. § 1343.  [Doc. 42, First Superseding Indictment].

On April 24, 2017, the assigned magistrate judge in the Florida case granted Holland's motion for reconsideration and ordered the case transferred to the Northern District of Georgia.  [Doc. 56].

On April 25, 2017, the Government asked the Court to stay the transfer of the case pending its appeal to the district judge, and on May 3rd, the Government appealed the order of transfer to the district court.  [Docs. 57, 59; Doc. 259 at 6-8].  In response, Holland asked that all proceedings, including the trial, be stayed pending the outcome of the Government's appeal to the district court.  [Docs 58, 60].  Citing the Speedy Trial Act, Holland specifically noted that "[a] stay of the proceedings will not affect Mr. Holland's right to a speedy trial."  [Doc. 60 at 3].  In addition, Holland filed a motion to continue the deadline for filing pretrial motions, stating (again) that "[a]n extension of the deadline to file pretrial motions will not affect Mr. Holland's right to a speedy trial."  [Doc. 62 at 3].  When this request was denied by the district court judge, Holland filed nine separate pretrial motions and one "Notice of Intention to File Additional Motions Upon Good Cause Shown."  [Docs. 64-70, 72-74].

The Government opposed Holland's request for an indeterminate stay of all proceedings, and explained that it was prepared to file timely oppositions to Defendant

Holland's pretrial motions and to proceed to trial on July 20, 2017. [Doc. 76 at 2]. On June 7, 2017, Holland moved again to continue the trial date. [Doc. 88]. The Government opposed that motion and insisted that the trial proceed as scheduled. [Doc. 94]. On June 27, 2017, the Florida district judge affirmed the magistrate judge's transfer order, and the case was transferred to the Northern District of Georgia. [Doc. 97].

After Holland's case was transferred to this district, the Government orally requested that this Court stay for 60 days its consideration of certain pretrial motions that were filed while this case was pending in the Southern District of Florida because it was considering whether to bring additional charges that could affect the viability and relevance of the motions. On August 10, 2017, I granted the Government's request. [Doc. 108].

On September 26, 2017, a grand jury in this district returned a 13-count Second Superseding Indictment against not only Holland, but also William Moore and Edmundo Cota (collectively, "Defendants"). [Doc. 121, Second Superseding Indictment]. After Holland was arraigned on the Second Superseding Indictment, he requested a 90-day extension to file pretrial motions. [Doc. 139]. I granted the 90-day extension, over the Government's objection. [Doc. 147]. As of today's date,

collectively, Defendants have filed approximately 50 pretrial motions, most of which remain pending before this Court.

## II.   DISCUSSION

### A.   Defendants' Motions to Dismiss Based on Alleged Due Process Violations, Including Pre-Indictment Delay

Defendants seek dismissal of the Second Superseding Indictment and all charges against them based on pre-indictment delay, or alternatively, dismissal pursuant to Rule 48(b) and/or Rule 6(e) of the Federal Rules of Criminal Procedure.

### 1.   Pre-Indictment Delay

Defendants first argue that the Second Superseding Indictment against them should be dismissed because of pre-indictment delay. [Docs. 177, 181, 199, 205, 261]. The Due Process Clause of the Fifth Amendment to the United States Constitution can bar an indictment brought within the applicable statute of limitations if it is shown that the "pre-indictment delay ... caused substantial prejudice to [the defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." United States v. Powers, No. 1:05-cr-269-TWT-CCH, 2006 WL 8426579, at *3 (N.D. Ga. Mar. 24, 2006) (citing United States v. Marion, 404 U.S. 307, 323-27, 92 S. Ct. 455, 465-66 (1971)). Whether the Indictment should be dismissed against any or all of the Defendants because of pre-indictment delay is

governed by <u>United States v. Lovasco</u>, 431 U.S. 783, 789, 97 S. Ct. 2044 (1977) and <u>United States v. Foxman</u>, 87 F.3d 1220, 1222 (11th Cir. 1996).  <u>Id.</u>

In <u>United States v. Lovasco</u>, the Supreme Court observed that "statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide 'the primary guarantee, against bringing overly stale criminal charges.'" <u>Lovasco</u>, 431 U.S. at 789.  Nevertheless, the Due Process Clause can bar an indictment even when the indictment is brought within the limitations period.  <u>Id.</u>

In <u>United States v. Foxman</u>, the Eleventh Circuit, citing <u>Lovasco</u>, described the two-pronged analysis used to determine whether a defendant's right to due process has been violated by a pre-indictment delay:

> [The defendant] must have shown that pre-indictment delay caused him actual substantial prejudice and that the delay was the product of a deliberate act by the government designed to gain a tactical advantage....  For due process to [require] dismissal, the delay must have resulted in actual substantial prejudice [to the defendant]....  But, substantial prejudice from delay, standing alone, does not violate due process.  The delay must also be the product of a deliberate act by the government designed to gain a tactical advantage.

<u>Foxman</u>, 87 F.3d at 1222-23 (citations omitted); <u>see also</u> <u>United States v. Caporale</u>, 806 F.2d 1487, 1514 (11th Cir. 1986); <u>United States v. Butler</u>, 792 F.2d 1528, 1533 (11th Cir. 1986); <u>Stoner v. Graddick</u>, 751 F.2d 1535, 1543 (11th Cir. 1985); <u>United States v. Lindstrom</u>, 698 F.3d 1154, 1157 (11th Cir. 1983).  Delays before charges are

13

filed are scrutinized under the Due Process Clause, not the Speedy Trial Clause. United States v. MacDonald, 456 U.S. 1, 7 (1982).

Thus, to succeed on their motions to dismiss for pre-indictment delay, each defendant must show: (1) that the pre-indictment delay was the result of a deliberate act by the Government designed to gain a tactical advantage; and (2) that the pre-indictment delay caused the defendant actual substantial prejudice. Powers, 2006 WL 8426579, at *3. Tactical advantage is the touchstone in cases of pre-indictment delay. United States v. Wetherald, 636 F.3d 1315, 1324 (11th Cir. 2011) (stating that the defendant must show that the prosecution deliberately caused the delay to gain a tactical advantage); United States v. Marshall, 360 F. App'x 24, 26 (11th Cir. 2010) (holding that the delay must be the product of bad faith or intent to gain a tactical advantage). Courts require proof of actual prejudice; something that rises to "constitutional proportions" or impairs the fairness of trial. United States v. Solomon, 686 F.2d 863, 871 (11th Cir. 1982); Stoner, 751 F.2d at 1544. Courts apply a stringent standard to assess prejudice. United States v. LeQuire, 943 F.2d 1554, 1560 (11th Cir. 1991). "[S]ubstantial prejudice from delay, standing alone, does not violate due process." Foxman, 87 F.3d at 1223; Lovasco, 431 U.S. at 790. The defendant carries the burden of establishing both prongs. LeQuire, 943 F.2d at 1560. A failure of proof as to either prong is fatal to a claim. Lovasco, 431 U.S. at 790.

AO 72A
(Rev.8/82)

### a.   Defendant Holland

Holland complains that he was indicted in the Initial Holland Indictment in Florida in January 2017 just days before the five-year statute of limitations would have run for mail fraud and health care fraud.  [Doc. 180 at 4].  As noted above, statutes of limitations have traditionally served as the primary safeguard against bringing overly stale criminal charges.  United States v. Marion, 404 U.S. 307, 322 (1971).  Where charges are brought within the applicable statute of limitations, a defendant may argue a constitutional violation in violation of the Due Process Clause of the Fifth Amendment, but that clause has a "limited role to play" in protecting against pre-indictment delay.  Lovasco, 431 U.S. at 789.

Holland argues that he has been prejudiced because: (1) over the period in question, one physician witness (who may have provided unspecified exculpatory testimony) passed away in October 2014; (2) if the pre-indictment delay had not been so long, it might have been easier to locate other potential witnesses "each of whom would *likely* provide helpful testimony"; and (3) despite a diligent effort to obtain exculpatory documents from Tenet before Holland was indicted, "some" documents are unavailable because of the passage of time, "and with each passing week, month, and year that Mr. Holland cannot access them, it becomes less likely that they will be available to aid his defense." [Doc. 181 at 4-5 (italics added)].  Holland, however, has

not identified by name any of these witnesses who might have aided his defense, nor has he argued or shown that any of these witnesses were key or essential to his defense, what their expected testimony would be or how it would have been material to his defense, that no other witnesses are available who could testify to the same thing, or that their loss in some significant way has impaired his ability to mount a defense. Neither has he provided any specificity regarding the documents.  These sorts of speculative assertions do not meet the actual prejudice standard.  Stoner, 751 F.2d at 1546.  Thus, Holland has failed to satisfy the prejudice prong necessary to obtain dismissal based on pre-indictment delay.

As for the other prong of the analysis – that the pre-indictment delay was the result of a deliberate act of the Government to obtain a tactical advantage – Holland claims that the Government purposefully delayed indicting him on an individual basis in order to focus its investigation and parallel proceedings on the resolution of both the civil and criminal matters against Tenet and obtain a lucrative payout from Tenet, thus securing a more advantageous position before initiating prosecution against Holland. [Doc. 181 at 7-8].

There is no law requiring the Government to bring indictments well within the statute of limitations, particularly if bringing an indictment might jeopardize other related investigations. Powers, 2006 WL 8426579, at *4 (citing Lovasco, 431 U.S. at

16

792-93) ("[C]ompelling a prosecutor to file public charges as soon as the requisite proof has been developed against one participant on one charge would cause numerous problems in those cases in which a criminal transaction involves more than one person or more than one illegal act.")).   The relevant statutes of limitations gave the Government at least five years to bring an indictment against Holland.  "That it delayed doing so because it sought to investigate additional persons who may have participated in the alleged conspiracies is not the type of proscribed effort to obtain a tactical advantage that [Holland] must show to succeed on his Motion to Dismiss." Id.  In any event, the record shows that Holland was indicted less than three months after the global settlement with Tenet was finalized; there is no evidence of bad faith on the part of the Government.

Holland has pointed to no facts or evidence from which the Court could infer that the Government's delay was a deliberate act to gain a tactical advantage over Holland.  Instead, Holland argues only that the Government delayed indicting him while it investigated other defendants and attempted to work out a global settlement with Tenet.  Even if this is true, this type of prosecutorial decision has been sanctioned by the Supreme Court, which stated:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," precisely because investigative delay is not so one-sided.  Rather than deviating from

> elementary standards of "fair play and decency," a
> prosecutor abides by them if he refuses to seek indictments
> until he is completely satisfied that he should prosecute and
> will be able to promptly to establish guilt beyond a
> reasonable doubt.

Lovasco, 431 U.S. at 795; see also United States v. Thomas, 62 F.3d 1332 (11th Cir.

1995) (holding that a pre-indictment delay of 55 months was not a due process

violation in a case involving wire fraud and conspiracy to commit mail and wire fraud

where defendants failed to meet their burden of proving intentional delay for tactical

advantage).

Even though the Government does not have the burden of coming forward with

a reason for the delay, the Government states that to the extent there was a delay, it was

due to the sheer breadth and multiple moving parts inherent in this investigation, which

involved both criminal and civil investigations; receiving and reviewing voluminous

documents and data from Tenet and other third parties; hundreds of witness interviews

and testimony before the grand jury; guilty pleas by two individuals to a conspiracy to

pay and receive health care bribes; a global resolution by and between the United

States, the states of Georgia and South Carolina, Tenet, Tenet HealthSystem Medical,

Inc. and their subsidiary hospitals to resolve their criminal, civil, and administrative

liability; and a continued investigation to assess the viability of charges against other

individuals and entities. [Doc. 259 at 3-4, 16-17]. The Eleventh Circuit has held that,

18

"[E]ven where the defendant has been prejudiced by pre-accusation delay, if it is investigative delay[,] the defendant has not been deprived of due process." Thomas, 62 F.3d at 1339 (quoting LeQuire, 943 F.2d at 1560). Holland has not shown that to the extent there was a delay in indicting him, that it was due to anything other than an investigative delay.

Although Holland contends that the Government in this matter should have indicted him more expeditiously, he has failed to show that any delay in doing so was a bad-faith decision deliberately designed to obtain a tactical advantage against Holland. Especially where, as here, any delay is the result of the need for further investigation, courts have declined to find that a defendant's right to due process of law was violated. See, e.g., United States v. Witchard, 646 F. App'x 793, 796 (11th Cir. 2016) (no violation despite four-year delay between search of residence and indictment where case was complex, involved four federal agencies, over 60 victims, and scores of other witnesses); Thomas, 62 F.3d at 1339-40 (no violation even though 55-month pre-indictment delay); United States v. Hayes, 40 F.3d 362, 365 (11th Cir. 1994) (no due process violation despite three-year delay between identification of defendant as a target and indictment); United States v. Benson, 846 F.2d 1338, 1341 (11th Cir. 1988) (no violation even though eight-year investigative delay prejudiced defendant);

Stoner, 751 F.2d at 1543 (no violation despite 19-year delay in the absence of evidence the state delayed for improper purpose).

Because Holland has failed to carry his burden of proving both intentional delay for tactical advantage and prejudice, I RECOMMEND that his due process claim based on pre-indictment delay [Doc. 181] be DENIED.

### b.   Defendant Moore

Defendant Moore's motions to dismiss based on pre-indictment delay fail for the same or similar reasons as Holland's. [Docs. 177, 199]. Moore states that he was informed in January 2014 that he was a target of the Government's investigation, yet he was not indicted until 45 months later, in September 2017. [Doc. 177-1 at 3]. As discussed above, Moore's indictment followed a five-year investigation involving three grand juries, millions of documents, hundreds of witnesses, a global corporate settlement, two individual criminal guilty pleas, and the Initial Holland Indictment in Florida. [Doc. 177-1 at 2].

Moore argues that his due process rights have been violated as a result of the 45-month delay between his identification as a target and a charging decision. [Doc. 177-1 at 11]. He asserts that the relevant facts in this case date back to 1999, which alone creates enormous challenges regarding witness memories and recollections. [Id. at 10]. Moore argues that instead of indicting him in April 2014 as the Government

represented to his attorney that it was ready to do, the Government instead reversed course and intentionally moved the prosecution of Holland to Florida for a purely tactical advantage.

Moore, however, has failed to articulate what that tactical advantage allegedly was. [Id.]. He has also failed to show that the prosecution's decision to indict Holland in Florida rather than Atlanta was a deliberate act by the Government to obtain a tactical advantage over Moore, who had not yet been indicted when Holland was originally charged. As the Court stated in Lovasco, there is no due process violation where "the delay was caused by the government's efforts to identify persons in addition to the respondent who may have participated in the offenses." Lovasco, 431 U.S. at 796. To the extent that Moore contends the delay between indicting Holland in Florida and indicting Moore in Atlanta was a purposeful effort on the part of the Government to obtain a tactical advantage over Moore, that delay seems more attributable to Holland's legal wrangling to have his trial date postponed and have the case transferred to Georgia than any purposeful effort on the part of the Government to gain a tactical advantage over Moore.

As for prejudice, Moore next asserts that he has been harmed by the pre-indictment delay because two critical witnesses–Eric Gordon, outside counsel for Tenet, and Lenny Rosenfeld, a former Tenet compliance auditor who was involved in

the contracts–retired and are in poor health.  [Doc. 177-1 at 10-11].  Moore speculates that those witnesses may not be available at the time of trial, but he has not argued that they in fact are unavailable or that their testimony cannot be obtained through other means.  [Id. at 9].  In other words, Moore posits an example of speculative, not actual, prejudice.  Moore also points generally to the difficulty of locating witnesses due to the "enormous" size of Tenet's healthcare operations, hundreds of employees, and multiple clinics that Clinica operated, as well as the undocumented status of many, if not most, of the Clinica patients.  [Id. at 10].  Moore, however, has again failed to articulate or show how these challenges would have been any different had he been indicted sooner.  See United States v. Crouch, 84 F.3d 1497, 1515 (5th Cir. 1996) (en banc) (claim that delay caused loss of potential witnesses was insufficient to show actual prejudice absent a showing that such testimony would actually aid the defendant).

For all the reasons stated, Moore has failed to demonstrate the actual substantial prejudice from the delay required by the Eleventh Circuit in Foxman, and also that the delay was the product of deliberate actions by the Government to gain a tactical advantage against Moore.  Accordingly, I RECOMMEND that Moore's motions to dismiss the Second Superseding Indictment against him based on pre-indictment delay [Docs. 177, 199] be DENIED.

c.     **Defendant Cota**

In Defendant Cota's motions to dismiss based on pre-indictment delay [Docs. 261, 205], Cota argues that the pre-indictment delay has made it impossible to locate necessary data and material witnesses because most of Clinica's patients were undocumented Hispanic women in need of prenatal care who, even if they could be located, might face immediate detention and deportation if called upon to testify. [Doc. 261 at 4, 8-9]. Cota contends that obtaining testimony from the women who were patients at Clinica is crucial to his ability to rebut the charges against him, because this case – in Cota's opinion – is more about medical malpractice than about violations of the federal Anti-Kickback Statute and Defendants' alleged masking of fraudulent referral activity through pretextual or sham contracts.

Like Moore, Cota presents only general allegations of prejudice in the form of lost witnesses and evidence, and the potential of faded memories due to the passage of time. As noted earlier, such general allegations are not sufficient to constitute proof of actual substantial prejudice. United States v. Russo, 796 F.2d 1443, 1451 (11th Cir. 1986); United States v. Corbin, 724 F.2d 643, 648 (11th Cir. 1984) (stating that "[f]aded memories occasioned by pre-indictment delay do not alone satisfy the actual prejudice requirement"). Cota has failed to establish that the Government's purported delay in indicting him is the reason that he has been unable to locate witnesses – as

23

opposed to, as Cota characterizes it, the "fluid, temporary status" of the undocumented Clinica patient base and the enactment in Georgia of stricter immigration laws in 2011-2012. [Doc. 261 at 4, 7-8]. I note that to the extent the Government intends to rely on the patients' testimony, the Government faces the same concerns and issues concerning availability of witnesses and documents and fading memories. Cota's generalized and speculative claims do not satisfy the actual substantial prejudice prong that the law requires.

Cota has also failed to show that the Government intentionally delayed indicting him in order to gain a tactical advantage over him. Cota argues that the Government delayed charging him until it could negotiate guilty pleas with his former wife, Tracey Cota, and Gary Lang, and gain the tactical advantage of their cooperation. [Doc. 261 at 11-12]. In response, the Government argues that its efforts to build a case to withstand challenge at trial is in harmony with due process, rather than in direct conflict. [Doc. 303 at 12-13].

The Supreme Court has vested prosecutors with substantial discretion as to the timing of charges. See Lovasco, 431 U.S. at 790-96. In Lovasco, the Supreme Court squarely rejected a due process requirement that a prosecutor file charges as soon as he has assembled sufficient evidence to prove guilt beyond a reasonable doubt. Id. at 792. As discussed above, there is nothing improper when a prosecutor delays an

indictment for investigative purposes until he or she is completely satisfied that prosecution is warranted and may succeed on the merits. Id. at 795. The Due Process Clause does not require a prosecutor to elevate speed over the goal of orderly expedition. Id. at 796 ("We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.").

Here, Cota has merely alleged that the Government delayed indicting him until it could complete its investigation and secure witnesses to testify about the internal workings of Clinica and its negotiations with the Tenet Hospitals. Cota has failed to show what is required: *i.e.*, intentional Government action that delayed charges for the purpose of disadvantaging Cota's defense.

For the reasons stated, Cota has failed to carry his burden as to both prongs of the Constitutional analysis. He has not shown that the Government purposely delayed indicting him for tactical advantage, in anticipation that the delay would invariably lead to the unavailability of necessary but unknown persons and documents. Nor has Cota shown actual substantial prejudice from any alleged improper delay. Because Cota has failed to show that the Government's alleged pre-indictment delay deprived him of due process, I RECOMMEND that Cota's Motions to Dismiss Based on Pre-Indictment Delay [Doc. 261, 205] be DENIED.

25

### 2.      Evidentiary Hearing

Defendants request an evidentiary hearing to more fully flesh out the details of how they suffered prejudice due to the Government's pre-indictment delay, to provide a limited timeline of the Government's investigation and negotiated settlement with Tenet, and to present evidence concerning the difficulties that all parties are having locating and interviewing former Clinica patients.

Defendants' motions to dismiss, however, have presented no more than generalized allegations of misconduct and have failed to make a showing that an evidentiary hearing is warranted.  Defendants have failed to identify any specific evidence – testimonial or otherwise – that they seek to present to establish that they have suffered actual substantial prejudice due to pre-indictment delay or to establish that the Government's delay was a deliberate act to gain a tactical advantage over them.  Yet Defendants have had more than ten filings and 80 pages of briefing papers to do so.  The Court is capable of putting together its own timeline, and the Court does not need an evidentiary hearing to understand that trying to locate and interview former undocumented Clinica patients presents significant challenges given the nature of the immigration enforcement environment in the United States in general and in Georgia and South Carolina in particular.  Because Defendants have not identified or described any relevant or material evidence that they would offer during an evidentiary hearing

26

that would establish a violation of due process based on pre-indictment delay, I see no reason to hold an evidentiary hearing at this juncture.

### 3.   Defendants' Alternative Arguments

### a.   Fed. R. Crim. P. 48(b)

In the alternative, Defendants argue that the Second Superseding Indictment should be dismissed pursuant to Federal Rule of Criminal Procedure 48(b).

Rule 48(b) provides that "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R. Crim. P. 48(b).  The Eleventh Circuit has held that "[t]he rule ... vests much discretion in the trial court, and dismissal is mandatory only if the defendant's constitutional rights have been violated."  United States v. Butler, 792 F.2d 1528, 1533 (11th Cir. 1986).

The Supreme Court, however, has limited the application of this rule to post-arrest situations. Lovasco, 431 U.S. at 789 n.8; United States v. Marion, 404 U.S. 307, 319 (1971).  As a result, courts have routinely rejected claims under Rule 48(b) based on pre-arrest and/or pre-indictment delay.  See, e.g., United States v. Reme, 738 F.2d 1156, 1164 (11th Cir. 1984); United States v. Corona-Verbera, 509 F.3d 1105, 1114 (9th Cir. 2007) (citing United States v. Barken, 412 F.3d 1131, 1136 (9th Cir. 2005)

AO 72A
(Rev.8/82)

("Rule 48(b) comes into play only after a defendant has been placed under arrest.")); United States v. Stumpf, 827 F.2d 1027, 1029 (5th Cir. 1987); United States v. Primrose, 718 F.2d 1484, 1488 (10th Cir. 1983). Moreover, the Advisory Committee Notes explain that Rule 48(b) "is a restatement of the inherent power of the court to dismiss a case for want of prosecution." Fed. R. Crim. P. 48(b) Advisory Committee's Note to Subdivision (b). There has been no want of prosecution in this case. For the reasons stated, Rule 48(b) is inapplicable, and Defendants' reliance on this rule to support their claim of unlawful pre-indictment delay is misplaced.

### b.    Fed. R. Crim. P. 6(e)

Defendants' arguments under Fed. R. Crim. P. 6(e) are equally without merit. Defendants seek a dismissal of all counts of the Second Superseding Indictment due to alleged breaches of grand jury secrecy requirements during the Government's investigation of Tenet and the Defendants.

Rule 6(e) of the Federal Rules of Criminal Procedure requires that attorneys for the Government not disclose matters occurring before the grand jury except in specified circumstances. In Holland's Motion to Dismiss-2 (as adopted by Moore and Cota), Holland asserts that in January 2015, a former prosecutor involved in the Government's investigation improperly discussed aspects of the ongoing grand jury investigation of Tenet with another passenger during a conversation on a commercial

airline flight.  [Doc. 181 at 11-12].  The other passenger turned out to be the former chief of staff to Tenet Healthcare Corporation's Chief Executive Officer.  [Id. at 12]. Holland argues that this disclosure of information "had the potential of infecting the testimony of potential witnesses even at the highest level of the company."  [Id. at 13].

Holland further asserts that on another occasion in 2015, a different prosecutor involved in the Government's investigation improperly discussed aspects of the investigation with the employer of a former employee of the Atlanta Medical Center, possibly in an attempt to intimidate that witness.  [Doc. 181 at 13-16].  Such disclosures, according to Defendant Holland, somehow "damaged his ability to receive a fair trial."  [Id. at 16].

In support of his motion to dismiss, Holland cites United States v. Midland Asphalt Corp., 840 F.2d 1040, 1046 (2d Cir. 1988), in which the Second Circuit noted that, "[t]he non-disclosure provisions of Rule 6(e) protect society's interest in keeping secret the identity of grand jury witnesses and persons under investigation."  Id.  As the Supreme Court later explained, however, "The text of Rule 6(e) contains no hint that a governmental violation of its prescriptions gives rise to a right not to stand trial." Midland Asphalt Corp. v. United States, 489 U.S. 794, 802, 109 S. Ct. 1494 (1989). "Only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional

right not to be tried.  An isolated breach of the traditional secrecy requirements does not do so."  Id.

Holland has failed to articulate any basis upon which the Court could find that the isolated breaches he has described (that allegedly occurred two years before he was even indicted) in any way damaged his ability to receive a fair trial or give rise to a constitutional right not to be tried.  The same applies to his co-defendants.  Because Defendants have failed to show how any alleged breach of grand jury secrecy substantially prejudiced them or otherwise affected the charging decisions, I RECOMMEND that Defendants' motions to dismiss due to violations of Rule 6(e) be DENIED.

### 4.    Summary

For all the reasons discussed above, I RECOMMEND that Defendants' motions to dismiss for due process violations [Docs. 177, 181, 199, 205, 261] be DENIED.

### B.    Holland's Motion to Dismiss-1 for Violation of Right to Speedy Trial

The final motion addressed by this Report and Recommendation, Holland's Motion to Dismiss-1 [Doc. 180], asks the Court to dismiss the Second Superseding Indictment based on the Government's alleged violation of Holland's constitutional right to a speedy trial, or, in the alternative, pursuant to Federal Rule of Criminal Procedure 48(b).  Holland's co-defendants did not adopt this motion.

30

### 1.    Holland's Sixth Amendment Right to a Speedy Trial

Holland argues that the Government's "delay tactics" in this case have resulted in several years of pre-indictment delay which, when coupled with nearly one year of post-indictment delay, together have violated his constitutional right to a speedy trial. [Doc. 180 at 2].

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." U.S. Const. amend. VI.  The Sixth Amendment "is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved charges."  United States v. MacDonald, 456 U.S. 1, 8 (1982).  However, the Sixth Amendment is "not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations." Id.

In Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182 (1972), the Supreme Court established a four-factor test to determine whether a post-indictment delay has caused a speedy trial violation.  The four factors are:  (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the

prejudice to the defendant.  Barker, 407 U.S. at 530, 92 S. Ct. at 2192.  "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay ...."  United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006) (quoting Doggett v. United States, 505 U.S. 647, 651-52, 112 S. Ct. 2686, 2690-91 (1992)).  "Only if this threshold point is satisfied may the court proceed with the final three factors in the Barker analysis."  Id. (citing United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996)).   Delays exceeding one year are generally found to be "presumptively prejudicial."  Id. (citing Doggett, 505 U.S. at 652 n.1, 112 S. Ct. at 2691 n.1; Clark, 83 F.3d at 1352).  In the Eleventh Circuit, unless the first three factors uniformly "weigh heavily against the government," the defendant must show actual prejudice to prevail. United States v. Davenport, 935 F.2d 1223, 1239 (11th Cir. 1991).

While complying with the Speedy Trial Act does not bar Sixth Amendment speedy trial claims, "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the [S]ixth [A]mendment right to a speedy trial has been violated."   United States v. Saintil, 705 F.2d 415, 418 (11th Cir. 1983) (citation omitted) (per curiam).  "[A] defendant generally cannot establish a Sixth Amendment speedy trial claim, however long the delay, if the government pursued the prosecution with reasonable diligence, and the defendant fails to show that the delay resulted in

specific prejudice to his defense." <u>United States v. Harris</u>, 376 F.3d 1282, 1290 (11th Cir. 2004) (citation and internal quote marks omitted).

### a.    Length of Delay

The Eleventh Circuit has held that to trigger a speedy trial analysis in the first instance, the defendant must show that the period of delay is "presumptively prejudicial"; if not, a district court need not consider the other factors. <u>United States v. Knight</u>, 562 F.3d 1314, 1323 (11th Cir. 2009). A delay becomes "presumptively prejudicial" as it approaches one year. <u>Id.</u> (citing <u>United States v. Schlei</u>, 122 F.3d 944, 987 (11th Cir. 1997)).

To determine the length of the pretrial delay, the court calculates the time that elapsed between "when the Sixth Amendment right attached until trial (or, until the pretrial motion to dismiss on this ground is determined)." <u>United States v. Villarreal</u>, 613 F.3d 1344, 1350 (11th Cir. 2010) (citation omitted). Here, the delay between the date of Holland's initial indictment in Florida (January 24, 2017) and the filing of his motion to dismiss (January 19, 2018) is less than one year. Therefore, the delay does not extend past the "bare minimum needed" to satisfy the threshold showing of presumptive prejudice. <u>Doggett</u>, 505 U.S. at 652.

Moreover, by order of the district court in Florida [Doc. 41], at least some of that time period was excluded from the Speedy Trial Act, due to a series of motions filed

by Holland, including his motion to transfer the case to Georgia [Doc. 20], his motion to stay or extend the deadline to file pretrial motions [Doc. 22], and/or his motion to designate the case as complex, to continue the trial date, and to exclude the time under the Speedy Trial Act. [Doc. 27]. This factor, therefore, does not weigh heavily against the Government, and the length of the delay is insufficient to trigger the speedy trial analysis.

Nevertheless, Holland argues that because his post-indictment delay is "approaching one year," he meets the threshold, and a speedy trial analysis is warranted. (Doc. 180 at 8, citing Knight, 562 F.3d at 1323). Apparently recognizing that he does not quite meet the threshold showing of presumptive prejudice, Holland asks the Court to couple whatever post-indictment delay there has been with what Holland characterizes as the "inordinate" several years of pre-indictment delay in order to find that he meets the threshold and that the first factor weighs heavily against the Government.

In support of his request, Holland cites United States v. Ingram, 446 F.3d 1332 (11th Cir. 2006), a case in which the Eleventh Circuit found that a two-year pre-indictment delay coupled with a two-year post-indictment delay violated the defendant's right to a speedy trial. However, even the Ingram court acknowledged that pre-indictment delay is "wholly irrelevant" to whether the Sixth Amendment speedy

trial analysis is engaged or triggered.  Id. at 1339.  Only after concluding that the Sixth Amendment's speedy trial analysis was triggered did the Ingram court state that it may be appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the Government.  See id. at 1339.  Because the speedy trial analysis has not been triggered in this case, Ingram does not apply.

Even if the analysis were triggered in this case, Ingram is readily distinguishable. In that case, the pre-indictment delay was considered inordinately long because the single charge was lying on a firearms application, the investigation was relatively simple, the investigating officer quickly determined who had committed the crime and where he could be located, yet the government waited two years to seek an indictment.  Id. at 1334-35.

Holland has not disputed that the multiple investigations in this case have been extraordinarily complex and wide-ranging, involving a multi-million dollar scheme or schemes, multiple hospitals, multiple governmental agencies, a series of grand juries, parallel civil and criminal lawsuits, hundreds of witnesses, and millions of pages of documents.  As even Holland has acknowledged, the complexity of this case "is evident from the indictment." [Doc.  27 at 5].  Where, like here, the charges do not involve an "ordinary street crime," but rather a complex series of alleged fraudulent transactions, multiple indicted and unindicted co-conspirators, multiple investigations

with multiple agencies, witnesses, grand jury subpoenas, and millions of documents, courts have found that pre-indictment delays of several years' duration were not "inordinate."  See, e.g., United States v. Uranga, No. 1:13-cv-0463-LMM, 2016 WL 6525151, at *4 (N.D. Ga. Nov. 3, 2016) (two-and-a-half year pre-indictment delay was not inordinate given the complexity of the case where there were, among other things, 25 witnesses, more than 100 exhibits, multiple search warrants, analyses of phone records and shoe tread patterns, and a grand jury subpoena);  United States v. Henao-Toro, No. 04-20065-CR, 2010 WL 1459472, at *13 (S.D. Fla. Apr. 12, 2010) (distinguishing Ingram and finding that the five-year pre-indictment delay was not inordinate where the case "was not an ordinary street crime but a large [multinational] drug trafficking conspiracy..."); United States v. Valiente, No. 04-20046-CR, 2009 WL 1313198, at *12 (S.D. Fla. May 12, 2009) (ruling that a four-year pre-indictment delay was not inordinate because it resulted from "the complexity of the IRS investigation into the allegations of tax fraud," and involved the issuance of two search warrants, summonses for bank records, as well as at least 12 interviews with the defendants, the eventual co-defendants and various witnesses, as well as a two-year post-investigation review by superiors in accordance with IRS protocol).

>   **b.**    **Reason for the Delay**

Even if the Court were to assume that the post-indictment delay in Holland's case somehow entitles Holland to a presumption of prejudice and triggers the speedy trial analysis (which it does not), the second <u>Barker</u> factor–the reason for the post-indictment delay–also fails to weigh heavily against the Government.   The second factor focuses on "whether the government or the criminal defendant is more to blame for th[e] delay." <u>Vermont v. Brillon</u>, 556 U.S. 81, 90 (2009) (citing <u>Doggett</u>, 505 U.S. at 651).   In <u>Barker</u>, the Supreme Court established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." <u>Barker</u>, 407 U.S. at 529-30.   While deliberate delay "to hamper the defense" weighs heavily against the prosecution, <u>id.</u> at 531, delay caused by the defense weighs against the defendant, <u>Brillon</u>, 556 U.S. at 90 (citing <u>United States v. Loud Hawk</u>, 474 U.S. 302, 316 (1986) (noting that a defendant whose trial was delayed by his interlocutory appeal "normally should not be able ... to reap the reward of dismissal for failure to receive a speedy trial")).   "That rule accords with the reality that defendants may have incentives to employ delay as a 'defense tactic'; delay may work to the accused's advantage because witnesses may become unavailable or their memories may fade over time." <u>Brillon</u>, 556 U.S. at 90 (citing <u>Barker</u>, 407 U.S. at 521 (internal quote marks omitted)).

As to the second <u>Barker</u> factor, reason for the delay, I agree with the Government that much of the post-indictment delay in this case is attributable to

37

Defendant Holland.  Within one month of his initial indictment in Florida, Holland commenced filing a series of motions, including a motion for discretionary transfer to Georgia, which led to a six-month delay while the Government opposed that motion and attempted to proceed to trial.  But for Holland's motion to transfer, his trial was scheduled to begin in April 2017, and then July 2017 after an extension was granted.  [Doc. 180 at 11; Doc. 20; Doc. 41].  In addition to Holland's efforts to transfer venue, he made multiple requests to continue the trial date, stay the proceedings, and/or extend the deadline for filing pretrial motions.  [See, e.g., Docs. 22, 27, 88].  The Government opposed every one of those motions and insisted that it was prepared to proceed to trial in the Southern District of Florida.  [Doc. 76].

Moreover, to the extent that even more time has passed since Holland filed his motions and the case still has not been tried, Defendant Holland's extensive pretrial motions practice has been the cause of any delay.  Since the case was transferred to this district, Holland sought extensions to file additional pretrial motions, which requests were granted [Docs. 139, 147], and thereafter filed more than 27 pretrial motions.  Many, if not most, have been entirely without merit.  To suggest that the Government is responsible for most of the post-indictment delay in this case is to ignore the record.

Given that much of the post-indictment delay is attributable to Holland's pretrial motions practice, and also that at least some of the time has already been excluded

38

under the Speedy Trial Act, the reason for the delay is at most neutral and does not weigh heavily against the Government. See United States v. Knight, 562 F.3d 1314, 1323 (11th cir. 2009) (concluding that "the resolution of Knight's numerous pretrial motions, and the process of obtaining a second indictment" against him did not weigh in favor of the argument that Knight's speedy trial rights were violated); United States v. Woodley, 484 F. App'x 310, 319 (11th Cir. 2012) (concluding, in part, that because the defendant filed more than forty pretrial motions, and the district court conducted multiple pretrial hearings and proceedings, that the reason for the delay did not count against the government); United States v. Cordero, No. 4:05-cr-57-02-HLM-WED, 2007 WL 9672623, at *6 (N.D. Ga. Oct. 29, 2007) (concluding that the second factor did not weigh heavily against the government, in part, due to the complexity of the case and because "Mr. Cordero and his co-defendants have filed dozens, if not hundreds, of pretrial motions," to which the "Government has responded with reasonable diligence.").

To the extent Holland implies that the Government acted in bad faith by initially bringing this case against him in the Southern District of Florida, that argument is not supported by the record. The Court found that venue for the Initial Holland Indictment (and the First Superseding Indictment) was proper in that district, and it was only after Holland filed a motion for reconsideration that the district court in Florida agreed to

grant a discretionary transfer at Holland's request. There was no finding of bad faith, and Holland did not seek such a finding.

Where, as here, there is no evidence that the Government engaged in bad faith, the second <u>Barker</u> factor does not weigh heavily against the United States. <u>See, e.g.,</u> <u>United States v. Davenport</u>, 935 F.2d 1223, 1240 (11th Cir. 1991) (concluding that the reason for delay did not weigh heavily against the government where, among other things, there was "absolutely no evidence of bad faith by the government"); <u>United States v. Burke</u>, 673 F. Supp. 1574, 1579 (N.D. Ga. 1986), <i>aff'd</i>, 856 F.2d 1492 (11th Cir. 1988) (finding no violation of Sixth Amendment right to speedy trial where there was no evidence the government deliberately attempted to delay any stage of the progress of defendants' trial); <u>United States v. Mitchell</u>, 625 F. App'x 113, 118 (3d Cir. 2015) (finding no speedy trial violation where a substantial delay was attributable to the defendant and his co-defendants' pretrial litigation activities, and the government did not delay the case in bad faith but instead showed reasonable diligence in bringing the complex case to trial). For the reasons stated, I do not find that the second <u>Barker</u> factor weighs heavily against the Government.

### c.   Defendant's Assertion of the Right to a Speedy Trial

The third factor (whether the defendant asserted his right to a speedy trial) also does not weigh heavily against the Government. Holland waited almost 12 months

AO 72A
(Rev.8/82)

following his initial indictment before raising his speedy trial claim.  In the interim, he filed numerous requests to continue the trial date and for relatively large extensions of time to file pretrial motions.  He also repeatedly represented that a stay of the proceedings or extensions of time to file his pretrial motions would not affect his speedy trial rights.  [See Docs. 60, 62].  In United States v. Dunn, the Eleventh Circuit held that the third Barker factor did not weigh heavily against the Government where a defendant "waited over 12 months following his indictment (and over 2 months following the date on which he says the speedy trial period expired) before raising his speedy trial claim." Dunn, 345 F.3d 1285, 1296 (11th Cir. 2003).  Holland's year-long delay in asserting his right to a speedy trial undercuts his asserted concern about a prompt trial in this case.   In light of Dunn, I conclude that the third Barker factor does not weigh heavily against the Government.

### d.      Prejudice to the Defendant

Because the first three Barker factors do not uniformly weigh heavily against the Government, Holland must demonstrate actual prejudice.  Dunn, 345 F.3d at 1296; Harris, 376 F.3d at 1290.  The Supreme Court has recognized that a defendant generally cannot establish a Sixth Amendment speedy trial claim, however long the delay, if the government pursued the prosecution with "reasonable diligence," and the defendant fails to show that the delay resulted in "specific prejudice to his defense."

Harris, 376 F.3d at 1290 (citing Doggett, 505 U.S. at 656, 112 S. Ct. at 2693). The record in this case demonstrates that the Government has pursued Holland's prosecution with reasonable diligence. Accordingly, Holland must demonstrate actual prejudice to his defense because of the delay.

Prejudice to the defendant is evaluated in view of the three interests the right to a speedy trial was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. United States v. Schlei, 122 F.3d 944, 988 (11th Cir. 1997) (quoting Barker, 407 U.S. at 532). "The third factor is most important 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" Knight, 562 F.3d at 1323-23 (citing Schlei, 122 F.3d at 988).

Holland argues that the second and third prejudice factors are implicated here. He asserts that the way the Government has conducted the prosecution of this case—first forum shopping, then indicting co-defendants only upon transfer, coupled with the many years of delay in seeking an indictment—has caused him to have to seek medical and professional services for anxiety and other stress-related symptoms. [Doc. 180 at 14]. Anxiety and stress, however, are inherent in any prosecution, and general conclusory allegations are insufficient to constitute proof of actual prejudice. See United States v. Ailemen, 43 F. App'x 77, 81 (9th Cir. 2002) (finding no actual

42

prejudice where the anxiety suffered by the defendant as a result of his prosecution was indistinguishable from that suffered by other criminal defendants);  United States v. Graham, 538 F.2d 261, 265 (9th Cir. 1976) (finding minimal prejudice of a type normally attending criminal prosecution and stating that "conclusory allegations of general anxiety and strain could be made in connection with almost every criminal prosecution.").

Second, Holland reiterates his earlier claims of general prejudice from faded memories and the inability of several witnesses who testified before the grand jury to recall specific details due to the passage of time.  Such general conclusory allegations, however, fail to satisfy the burden of showing actual prejudice.  See Burke, 673 F. Supp. at 1580 ("Such vague assertions of faded memory and lost witnesses without connecting this loss to any material fact in issue will not satisfy the Barker prejudice factor.") (citations and internal quote marks omitted).

Similarly, Holland has failed to demonstrate that his defense has been impaired as a result of one physician witness passing away back in 2014 and pre- and post-indictment difficulties trying to locate "several likely helpful witnesses" and exculpatory documents.  Holland makes no representations about what the testimony might have been or what the documents might have shown, nor does he argue that the testimony or evidence would have been material to his defense, that no other witnesses

are available who could testify to the same thing, or that the loss of these witnesses and/or documents in some significant way has impaired his ability to mount a defense. See Schlei, 122 F.3d at 988 (concluding that defendant did not demonstrate actual prejudice because the witness at issue had died before the case went to trial and defendant provided no evidence that the witness's testimony would have been material). Mere conclusory allegations of impairment are insufficient to constitute proof of actual prejudice. Clark, 83 F.3d 1350, 1354.

In conclusion, the speedy trial analysis is not triggered in this case because Holland has failed to satisfy the threshold showing of presumptive prejudice. And even if it were triggered, Holland has failed to demonstrate actual prejudice. Thus, Holland has not been deprived of his constitutional right to a speedy trial. Accordingly, I RECOMMEND that his motion to dismiss the Second Superseding Indictment due to violation of his constitutional right to a speedy trial [Doc. 180] be DENIED.[2]

---

[2] Although Holland has reiterated his request for an evidentiary hearing on this motion also, I find that a hearing is not required because there was no inordinate delay caused by the Government, and Holland has not demonstrated any actual prejudice caused by any post-indictment delay. See Jenkins v. Purkett, 963 F.2d 1117, 1118 (8th Cir. 1992) (holding that evidentiary hearing was not required on the Barker v. Wingo factors where there was no inordinate delay, there was good reason for the delay, and the defendant did not show any prejudice from that delay that did occur); United State v. Jackson, 549 F.3d 963, 971-72 (5th Cir. 2008) (concluding that district court properly rejected defendant's Sixth Amendment claim without holding evidentiary

AO 72A
(Rev.8/82)

### 2.     Holland's Alternative Argument under Rule 48(b)

In the alternative, Holland again asks the Court to dismiss the charges against him in the Second Superseding Indictment pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure.  [Doc. 180 at 16-18].  As discussed earlier, Rule 48(b) reaffirms the Court's inherent power to dismiss a case for want of prosecution where there has been an unnecessary delay in presenting a charge to a grand jury, filing an information against a defendant, or bringing a defendant to trial.  Fed. R. Crim. P. 48(b) & advisory committee note to Subdivision (b).

To support his request, Holland cites an out-of-circuit case, United States v. Balochi, 527 F.2d 562, 563-64 (4th Cir. 1976), and a case from the Middle District of Florida, United States v. Black, 416 F. Supp. 59, 62 (M.D. Fla. 1976) for the proposition that a Rule 48(b) dismissal can be based on delay even when there is no deprivation of a constitutional right.  Both cases, however, are inapposite.

In Balochi, the Fourth Circuit affirmed a Rule 48(b) dismissal where the government had repeatedly failed to file briefs, failed to appear at hearings, and failed to prosecute the renewal of a charge that it had previously dismissed because its case was weak.  Balochi, 527 F.2d at 563.  Black involved a lengthy and unjustified delay

---

hearing because, among other things, the defendant had suffered no prejudice during the entirety of the prosecutorial delay).

by the government in locating and arresting the defendant despite the fact that the government possessed all information necessary to find the defendant and there was no excuse for the delay.  The court found that due to the unnecessary delay, the defendant lost his eligibility for sentencing as a young adult offender, and therefore was prejudiced.  Black, 416 F. Supp. at 62.  There has been no such unnecessary delay in locating Holland or prejudice due to any failure to prosecute.

As with Holland's motion to dismiss for violation of his Sixth Amendment right to a speedy trial, he has again failed to provide any factual or legal basis that would justify a Rule 48(b) dismissal based on unnecessary delay, whether on constitutional or nonconstitutional grounds.  See Knight, 562 F.3d at 1324 ("Because Knight did not establish a violation of the Sixth Amendment, it also was not an abuse of discretion for the district court to deny his motion to dismiss his indictment under Federal Rule of Criminal Procedure 48(b)."); see also Dunn, 345 F.3d at 1297 (affirming denial of defendant's Rule 48(b) motion for dismissal after concluding that defendant's Sixth Amendment rights were not violated).  Thus, I RECOMMEND that Holland's Motion to Dismiss-1 [Doc. 180] pursuant to Rule 48(b) be DENIED.

## III.    **CONCLUSION**

Based on the cited authority and for the reasons discussed above, I **RECOMMEND** that Defendants' Motions to Dismiss the Second Superseding

AO 72A
(Rev.8/82)

Indictment [Docs. 177, 180, 181, 199, 205, and 261] be **DENIED**.

**IT IS SO RECOMMENDED**, this 27th day of July, 2018.


_____
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)