IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION NO. |
| JOHN HOLLAND, WILLIAM MOORE, and EDMUNDO COTA, | 1:17-CR-00234-AT-CMS |
| Defendants. | |

## FIFTH REPORT AND RECOMMENDATION

Presently before the Court are the following motions seeking dismissal of various charges and preclusion of certain of the Government's theories of prosecution:

- Defendant John Holland's Motion to Compel in which Holland asks the Court to require the Government to elect between the two theories of conspiracy alleged in Count One, which has been adopted by Defendant William Moore and Defendant Edmundo Cota [Docs. 185, 204, 213];

- Holland's Motion to Dismiss for Failure to Allege Fraud, which has been adopted by Moore and Cota [Docs. 184, 202, 211];

- Holland's Motion to Dismiss Count Twelve for Defective Allegations and Lack of Materiality, which has been adopted by Moore regarding Count Thirteen [Docs. 189, 206];

- Holland's Motion to Dismiss Count Twelve based on the Ex Post Facto Clause, which has been adopted by Moore regarding Count Thirteen [Docs. 190, 208];

- Holland's Motion to Dismiss the Government's "One Purpose" Theory of Prosecution, which has been adopted by Moore and Cota [Docs. 264, 270, 282]; and

- Holland's Motion to Dismiss Based on Abuse of the Grand Jury, which has been adopted by Moore and Cota [Docs. 182, 200, 207].

## I.      **BACKGROUND**

Defendants Holland, Moore, and Cota (collectively, "Defendants") are charged in a thirteen-count second superseding indictment ("Indictment") alleging that they took part in an illegal kickback scheme involving bribes for patient referrals. [Doc. 121]. The Government alleges that in exchange for bribes, Cota's health clinic ("Clinica") funneled pregnant patients in need of childbirth services to hospitals run by Holland and Moore. [Id.]. Defendants allegedly accomplished this scheme by entering into sham contracts that disguised the kickbacks as payments for various services provided by Clinica to the hospitals. The specific charges are as follows:

Count One (against all Defendants): conspiracy to defraud the United States and pay and receive bribes in connection with a federal health care program. [Indictment ¶¶ 40-64].

Counts Two through Four (against Holland and Cota only): payment and receipt of bribes in connection with a federal health care program. [Id. ¶¶ 65-66].

Counts Five through Seven (against Holland and Cota only): wire fraud. [Id. ¶¶ 67-72].

Counts Eight and Nine (against Holland and Moore only): wire fraud. [Id.].

Count Ten[1] (against Holland only): falsification of books and records. [Id. ¶¶ 73-74].

Count Eleven (against Moore only): falsification of books and records. [Id.].

Count Twelve (against Holland only): major fraud against the United States. [Id. ¶¶ 75-79].

Count Thirteen (against Moore only): major fraud against the United States. [Id.].

Additional factual allegations in the Indictment are discussed below in connection with the various motions.

## II.  <u>DISCUSSION</u>

### A.   **Motion to Compel Election of Theories [Docs. 185, 204, 213]**

In Count One of the Indictment, the Government alleges a conspiracy pursuant to 18 U.S.C. § 371.  That statute provides, in relevant part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

---

[1]   I previously recommended that Count Ten be dismissed based on improper venue.  [Doc. 348].

18 U.S.C. § 371.  This statute criminalizes two distinct types of conspiracies—conspiracy to commit an offense against the United States (the "any offense" prong) and conspiracy to defraud the United States (the "defraud the United States" prong).

Paragraph 41 of the Indictment provides the introduction to the conspiracy count and alleges violations of both prongs of the conspiracy statute:

41.    From in or around 2000 to in or around 2013, in the Northern District of Georgia, and elsewhere, defendants

**JOHN HOLLAND,**
**WILLIAM MOORE,**
**and EDMUNDO COTA**

did willfully, that is with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, and others known and unknown:

a)     To defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicaid and Medicare Programs, in violation of Title 18, United States Code, Section 371, and to commit certain offenses against the United States, that is:

b)     To violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) and (B) by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person: (i) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a federal health care program, that is, the Medicaid Program; and (ii) to purchase,

4

lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a federal health care program, that is, the Medicaid Program; and

c) To violate Title 42, United States Code, Section 1320a-7b(b)(l)(A) and (B) by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for: (i) referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a federal health care program, that is, the Medicaid Program; and (ii) purchasing, leasing, ordering, and arranging for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a federal health care program, that is, the Medicaid Program.

[Indictment ¶ 41].

Defendants complain that the Indictment alleges that they conspired to both pay and receive bribes in connection with a federal health care program (a violation of the "any offense" prong) and also conspired to impede the lawful functions of the Medicaid and Medicare Programs (a violation of the "defraud the United States" prong). [Indictment ¶ 41 (a)-(c)]. Defendants argue that Count One is duplicitous because both prongs are alleged in a single count, and therefore, the Government should be required to elect between "the two theories of conspiracy" alleged in Count One. [Doc. 185 at 1-3]. Duplicity is the joining of two or more

distinct and separate offenses in a single count.  See United States v. Ramos, 666 F.2d 469, 473 (11th Cir. 1982); Fed. R. Crim. P. 8(a).

Defendants' motion is brought pursuant to Federal Rule of Criminal Procedure 14(a).  [Doc. 185 at 1].  That rule authorizes courts to craft any "relief that justice requires" if a joinder of offenses appears to prejudice a defendant.  See Fed. R. Crim. P. 14(a).  In support of their position, Defendants cite to case law holding that the proof required to support a § 371 conviction is different depending on the prong alleged.  [Doc. 185 at 5-6].  Defendants, however, cite no case law holding that a count alleging a single conspiracy based on both prongs of § 371 is duplicitous.[2]

The Supreme Court has long held that a single conspiracy offense may have many objects, and a count alleging a conspiracy to commit several crimes is not duplicitous; rather, it is a multi-object conspiracy, i.e., a single charged offense and

---

[2]   Defendants rely on United States v. Ervasti, 201 F.3d 1029 (8th Cir. 2000), United States v. Thompson, 814 F.2d 1472, 1475-77 (10th Cir. 1987), United States v. Haga, 821 F.2d 1036 (5th Cir. 1987), and United States v. Minarik, 875 F.2d 1186, 1194 (6th Cir. 1989).  [Doc. 185 at 9].  These cases, however, do not stand for the proposition that a single conspiracy count alleging violations of both prongs of § 371 is necessarily duplicitous.  Rather, they address whether the two prongs of § 371 may constitute separate offenses for purposes of double jeopardy and/or for determining whether there was a fatal variance between the indictment and the proof at trial.  Those are different questions from whether the Government may properly allege a single conspiracy count based on a scheme to violate both prongs of § 371.

an alleged violation of a single statute.  See Braverman v. United States, 317 U.S. 49, 54 (1942).  Thus, it is not improper for the Government to allege, in a single count, a conspiracy to commit more than one crime, including a conspiracy to commit crimes under both prongs of § 371.  See United States v. Bane, No. 8:09-cr-352-T-33-MAP, 2010 WL 962779, at *3 (M.D. Fla. Mar. 16, 2010) (rejecting the argument that Defendants make in this motion); May v. United States, 175 F.2d 994 (D.C. Cir. 1949) (holding that a violation of both prongs of § 371 may be alleged in a single conspiracy count without charging more than one offense, and stating "neither a multiplicity of objects nor a multiplicity of means converts a single conspiracy into more than one offense").

Here, conspiracy is the crime, and the various alternatives articulated under § 371 overlap because the object of the conspiracy to defraud the United States is also violative of a specific statutorily-defined federal offense.  Nevertheless, it is the single agreement that is the crime, and only the single penalty prescribed by the statute can be imposed.  As such, Count One is not duplicitous.  See Ramos, 666 F.2d at 473; United States v. Smith, 891 F.2d 703, 711-13 (9th Cir. 1989) (holding that an indictment charging conspiracy to defraud the United States and to commit substantive offenses in a single count was not unconstitutionally duplicitous because the two clauses of § 371 establish alternative means of commission rather

7

than two distinct conspiracy offenses); <u>United States v. Stickle</u>, 355 F. Supp. 2d 1317, 1329 (S.D. Fla. 2004) (concluding that an indictment charging conspiracy under both prongs of § 371 was not unconstitutionally duplicitous).   For the reasons stated, I conclude that Count One of the Indictment is not duplicitous, but rather properly alleges multiple objectives of a single unlawful conspiracy. Accordingly, I **RECOMMEND** that the Motion to Compel Election of Theories [Docs. 185, 204, 213] be **DENIED**.

**B.     Motion to Dismiss for Failure to Allege Fraud [Docs. 184, 202, 211] and Motions to Dismiss Counts Twelve and Thirteen for Defective Allegations and Lack of Materiality [Docs. 189, 206]**

In their Motion to Dismiss for Failure to Allege Fraud, [Docs. 184, 202, 211], Defendants argue that the various fraud counts should be dismissed pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v).   Those counts are: a portion of Count One alleging conspiracy to defraud the United States and pay and receive bribes; Counts Five through Nine alleging wire fraud; and Counts Twelve and Thirteen alleging major fraud against the United States.   In related motions, Holland and Moore seek to dismiss Counts Twelve and Thirteen for failure to allege materiality and for failure to allege fraud with sufficient specificity.   [Docs. 189, 206].

8

### 1.   Legal Standard

Federal Rule of Criminal Procedure 12 authorizes the district court to dismiss a criminal charge for "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).  In ruling on such a motion, "a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes."  United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in the original) (reversing trial court's dismissal of an indictment charging the defendants with mail fraud and conspiracy to launder proceeds of mail fraud).  In ruling on a motion to dismiss, the allegations in the indictment are treated as true.  See United States v. Fitapelli, 786 F.2d 1461, 1463 (11th Cir. 1986) ("In judging the sufficiency of the indictment, the court must look to the allegations and, taking the allegations to be true, determine whether a criminal offense has been stated.").

At this stage in the litigation, the Court's role is limited to determining whether the indictment is legally sufficient.  A legally sufficient indictment must (1) present the essential elements of the charged offense, (2) notify the accused of the charges against him, and (3) enable the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.  See United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir.

2009).  "In determining whether an indictment is sufficient, we read it as a whole and give it a common sense construction."  Id.

The Eleventh Circuit has repeatedly held that unlike the procedural rules governing civil cases, the Federal Rules of Criminal Procedure contain no mechanism for a pre-trial determination of the sufficiency of the evidence, and motions seeking such relief in criminal cases are improper.  In United States v. Critzer, the Eleventh Circuit stated:

> There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence.  Moreover, this court is constitutionally barred from ruling on a hypothetical question. The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute.

951 F.2d 306, 307 (11th Cir. 1992) (per curiam).

Here, Defendants do not argue that the fraud charges fail to notify them of the charges against them or fail to enable them to rely upon a judgment under the Indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.  Rather, they contend that the fraud charges fail to allege an essential element of fraud, i.e., that the United States actually lost any money or property as a result of the alleged misconduct.  [Doc. 184 at 2-9].  According to Defendants, the Government received exactly what it paid for because all services that were billed for were actually provided, and therefore there was no fraud.  [Id.].

10

## 2.    Defendants' Arguments Applicable to All of the Fraud Counts

Defendants rely on the Eleventh Circuit decision in United States v. Takhalov, 827 F.3d 1307, 1313-14 (11th Cir. 2016) in support of their motion to dismiss the various fraud counts.  Defendants argue that an alleged scheme, no matter how deceptive, can meet the standard for criminal fraud only if it deprives the victim of some essential element of a bargain.  [Doc. 184 at 10-14].  According to Defendants, that standard is not met here because the services that the Medicaid and Medicare Programs paid for were, in fact, actually provided to the Clinica patients; therefore the Government got exactly what it paid for—medical services.  [Id.].

This argument fails because Takhalov involved a jury instruction, not a pretrial motion to dismiss, and it did not alter the pleading standards for a criminal indictment.  While Defendants may choose to argue "no harm, no foul" in their closing arguments, the allegations in the Indictment certainly allow for the Government's theory that Defendants committed fraud by causing the United States to pay for medical services that it would not otherwise have paid for.  The Indictment states that the United States "would not pay claims submitted by a provider hospital for patient services that Medicaid knew were the result of a violation of the federal Anti-Kickback Statute or which were based on the offer or

11

payment of remuneration directly, indirectly, overtly, covertly, in cash or in kind, in return for referring a beneficiary to that provider hospital." [Indictment ¶ 21]. The Indictment alleges that the Medicaid and Medicare Programs bargained for services that were not tainted by bribes and that the Programs did not receive such services. As discussed in more detail below, I conclude that the Government has made sufficient allegations to survive a motion to dismiss the fraud count, and Takhalov does nothing to alter this analysis. See United States v. Chan, No. 1:14-cr-203-ODE-AJB, Doc. 100 (N.D. Ga. Oct. 27, 2016) (rejecting argument based on Takhalov that customers who bought dietary supplements received exactly what they paid for at the price they agreed to pay, and concluding that a reasonable jury could find that the customers bargained not only for a dietary supplement at a particular price, but also for a dietary supplement that was legal and safe).

Moreover, Defendants ignore a century of Supreme Court precedent holding that conspiracy to defraud the United States includes not only cheating the United States out of property or money, but also includes "interfer[ence] with or obstruct[ion of] one of its lawful government functions by deceit, craft or trickery, or at least by means that are dishonest." Hammerschmidt v. United States, 265 U.S. 182, 188 (1924). Thus, the United States need not suffer an actual loss from the fraud. It is enough if the "legitimate official action and purpose shall be

12

defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention." Id. See also Dennis v. United States, 384 U.S. 855, 861 (1966) ("It has long been established that [the language in § 371 charging a conspiracy "to defraud the United States, or any agency thereof in any manner or for any purpose"] is not confined to fraud as that term has been defined in the common law.  It reaches any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government."). This Court is bound by this precedent, and Defendants' arguments to the contrary are unavailing.

### 3.    Analysis of Each of the Fraud Counts

#### a.    *Count One (Conspiracy to Defraud the United States)*

With respect to Count One, Defendants take issue with the allegations contained in subsection (a) of Paragraph 121, in which the Government alleges that Defendants conspired to violate the "defraud the United States" prong of the statute by conspiring to impede the lawful functions of the Medicaid and Medicare Programs.  [Indictment ¶ 41(a)].  "The elements of a conspiracy under 18 U.S.C. § 371 are (1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement."  United States v.

13

Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003) (citing United States v. Adkinson, 158 F.3d 1147, 1153 (11th Cir. 1998)); see also 18 U.S.C. § 371. Actual financial harm to the United States is not an element a § 371 offense. See Tanner v. United States, 483 U.S. 107, 128 (1987) (addressing the second prong of § 371 and stating "[i]f petitioners' actions constituted a conspiracy to impair the functioning of the [federal agency], no other form of injury to the Federal Government need be established for the conspiracy to fall under § 371").

In the thirty-seven-page Indictment, the Government has clearly alleged the three elements necessary to state a § 371 conspiracy offense based on conspiring to impede the lawful functions of the Medicare and Medicaid Programs. The Indictment alleges that Defendants did "willfully . . . and knowingly combine, conspire, confederate, and agree with each other, and others known and unknown . . . [t]o defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services . . . ." [Indictment ¶ 41]. It goes on to allege that in furtherance of the conspiracy, and to accomplish their objects and purpose, Defendants committed and caused to be committed numerous overt acts, including, but not limited to, Tenet's payment of thousands of dollars in bribes to Cota. [Id. ¶¶ 40-64].

14

Moreover, the Indictment provides sufficient factual detail to back up its accusations of a conspiracy to defraud the United States.  For example, it specifies that Defendants unlawfully impeded the functioning of the United States by causing Medicaid and Medicare Programs to pay claims that were tainted by violations of the Anti-Kickback Statute ("AKS").  [Indictment ¶¶ 21, 25, 29].  It alleges that Defendants used "deceitful and dishonest means," including sham contracts, to conceal the allegedly unlawful conduct.  [Id. ¶¶ 46-47, 49, 52, 64].  It alleges further that Defendants impeded the administration and oversight of the Corporate Integrity Agreement, an agreement entered into between Tenet and the United States Department of Health and Human Services' Office of Inspector General that specifically conditioned Tenet's continued participation in the Medicaid and Medicare Programs on its compliance with the AKS.  [Id. ¶¶ 30-32].  These are but a few of the facts set out in the Indictment that support the Government's conspiracy charge under the "defraud the United States" prong of § 371.

### b.    *Counts Five through Nine (Wire Fraud)*

Counts Five through Nine allege five counts of wire fraud in violation of 18 U.S.C. § 1343.  [Indictment ¶¶ 67-72].  That statute provides, in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or

> fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. The Eleventh Circuit has held that the elements of wire fraud are "(1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme." United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003) (citing United States v. Ross, 131 F.3d 970, 984 (11th Cir. 1997)). Contrary to Defendants' arguments, financial harm to the United States is not an element of a wire fraud charge. See United States v. Williams, 527 F.3d 1235, 1245 (11th Cir. 2008).

In Counts Five through Nine of the Indictment, the Government incorporates the first thirty-nine paragraphs setting out the alleged scheme, tracks the statutory language for wire fraud, and then identifies five specific electronic funds transfers from the Georgia Medicaid Program to Tenet hospitals, one for each count. [Indictment ¶¶ 67-72]. These allegations satisfy all of the required elements for wire fraud and provide sufficient factual detail.

### c.   Counts Twelve and Thirteen (Major Fraud Against the United States)

Finally, Counts Twelve and Thirteen of the Indictment allege major fraud against the United States in violation of 18 U.S.C. §1031. That statute provides:

(a)   Whoever knowingly executes, or attempts to execute, any scheme or artifice with the intent--

(1)   to defraud the United States; or

(2)   to obtain money or property by means of false or fraudulent pretenses, representations, or promises,

in any . . . form of Federal assistance . . . , if the value of such . . . Federal assistance, or any constituent part thereof, is $1,000,000 or more . . . .

18 U.S.C. § 1031. The elements of this crime, tailored to the facts of this case, are: (1) that the defendant knowingly executed a scheme with the intent to defraud the United States, or to obtain money by means of materially false or fraudulent pretenses, representations, and promises; (2) that the scheme took place in connection with a form of Federal assistance; and (3) that the value of such Federal assistance, or any constituent part thereof, was one million dollars or more. See United States v. Nolan, 223 F.3d 1311, 1314 (11th Cir. 2000) (approving a jury instruction to this effect). Contrary to Defendants' arguments, financial harm to the United States is not an element of this crime either.

17

Like the other counts discussed above, Counts Twelve and Thirteen closely track the language of the statute.   [Indictment ¶¶ 76, 79].   They also contain sufficient factual detail by incorporating the factual allegations in Paragraphs 1 through 39 (the facts in the "General Allegations" portion of the Indictment) and Paragraphs 43 through 63 (the facts in the "Manner and Means of the Conspiracy" portion of the Indictment).  The Indictment alleges (1) that provider hospitals were required to submit annual cost reports to the Centers for Medicare and Medicaid Services [Indictment ¶¶ 11, 27]; (2) that the cost reports contain a certification that the services identified in the report "were provided in compliance with the laws and regulations" regarding the provision of health care services, including compliance with the AKS [id. ¶ 29]; (3) that Holland and Moore "caused to be submitted cost reports for Tenet Hospitals that contained materially false, fraudulent, and misleading representations that the services identified in the cost report 'were provided in compliance with the laws and regulations' regarding the provision of health care services, to include the federal Anti-Kickback Statute" [id. ¶ 52(c)]; and (4) that Holland and Moore executed a scheme to defraud the United States by submitting two specific medical cost reports—one submitted on behalf of North Fulton Medical Center by Holland (Count Twelve) and one submitted on

behalf of Atlanta Medical Center by Moore (Count Thirteen) (collectively, the "2011 Cost Reports") [id. ¶ 79].

In their Motions to Dismiss Counts Twelve and Thirteen for Defective Allegations and Lack of Materiality [Docs. 189, 209], Holland and Moore argue that the major fraud counts should be dismissed because the Indictment fails to specify what particular statement within the 2011 Cost Reports is alleged to be materially false.[3]   [Doc. 189 at 8-11].   In response, the Government states that Holland and Moore are accused of committing major fraud based on their certifications within the 2011 Cost Reports regarding compliance with the AKS. [Doc. 277 at 24-27].   Indeed, Paragraph 52(c), which is incorporated into Counts Twelve and Thirteen, provides ample notice that the Government is alleging that the certification regarding compliance with the AKS is the alleged material misrepresentation in the 2011 Cost Reports.   To the extent Holland and Moore desired clarity regarding the particular statements, the Government has provided it, making clear in its brief that the misrepresentations alleged in Counts Twelve and

---

[3]   Holland also argues that he "neither submitted the cost report nor had any authority or control over its submission," and attaches evidentiary exhibits to his motion in an attempt to show that the Indictment inaccurately reflects his professional role during the relevant time.   [Doc. 189 at 3, 7-8].   Asking the Court to consider facts outside the Indictment or to make a pre-trial ruling regarding the sufficiency of the evidence is improper.   Holland can make this argument at trial, but it is not a proper argument in the context of a pre-trial motion to dismiss.

Thirteen are the representations in the 2011 Cost Reports concerning compliance with the AKS.  [Id. at 26].  To the extent there ever was any question about what particular portion of the 2011 Cost Reports is at issue—which I do not think there ever was—the Government has answered that question.  [Id.].  Dismissal is not warranted on this basis.

Holland and Moore also cite cases interpreting the False Claims Act, arguing that to the extent the Government is relying on their respective certifications in the 2011 Cost Reports (in which they certify, among other things, that the services identified in those reports were provided in compliance with the AKS), such certifications are not, as a matter of law, sufficient to state an offense.  [Doc. 189 at 11-16].  The cited cases do not address the pleading standards applicable to criminal indictments and do not support pre-trial dismissal of Counts Twelve and Thirteen.

Finally, Holland and Moore argue that any misstatements in the 2011 Cost Reports concerning compliance with the AKS are not material.  [Doc. 189 at 11-16].  "[A] false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed."  Neder v. United States, 527 U.S. 1, 16 (1999) (citations and quotations omitted).  Whether a statement or omission is material is a question for

the jury.  See United States v. Gaudin, 515 U.S. 506, 522 (1995); see also United States v. Ferro, 252 F.3d 964, 967 (8th Cir. 2001) (reversing the district court's dismissal of fraud charges on the issue of materiality and stating that the district court erred procedurally in taking up the question of materiality prior to trial). Here, the Government has made a facially sufficient allegation of materiality in Paragraph 29, wherein it alleges that Medicare would not pay funds to a provider hospital for patient services that Medicare knew were the result of a violation of the AKS.   [Indictment ¶ 29].   Given the facially sufficient allegations of materiality, it is not proper for the Court to make a pre-trial determination of the sufficiency of the evidence on the issue of materiality.  See Critzer, 951 F.2d at 307-08.

### 4.   Conclusion

Taken as a whole and given a "common sense construction," Counts One, Five through Nine, Twelve, and Thirteen meet the basic pleading requirements as established by the Federal Rules of Criminal Procedure and binding Eleventh Circuit case law.  The Indictment tracks the language of the relevant statutes, and it includes sufficient detail to place Defendants on notice of the allegations against them and to defend against double jeopardy.  This is all that the law requires.  See Jordan, 582 F.3d at 1245.  Accordingly, I **RECOMMEND** that the Motion to

Dismiss for Failure to Allege Fraud and the Motion to Dismiss Counts Twelve and

Thirteen for Defective Allegations and Lack of Materiality [Docs. 184, 189, 202,

206, 211] be **DENIED**.

**C.    Motions to Dismiss Counts Twelve and Thirteen based on the Ex Post Facto Clause [Docs. 190, 208]**

In their next motion, Holland and Moore again take aim at Counts Twelve

and Thirteen of the Indictment, arguing that those counts violate the *ex post facto*

clause of the United States Constitution.  [Doc. 190, 208].  The *ex post facto* clause

prohibits, among other things, the enactment of statutes that punish as a crime an

act previously committed that was innocent when done.    See Collins v.

Youngblood, 497 U.S. 37, 52 (1990).

As discussed above, 18 U.S.C. § 1031 prohibits the execution (or attempted

execution) of a scheme to defraud the United States.  On May 20, 2009, § 1031

was amended, expanding its reach to fraudulent schemes like the one alleged in

this case, i.e., a scheme related to any "form of Federal assistance."   In their

motion, Holland and Moore complain that the conduct with which they are charged

in Counts Twelve and Thirteen was not made illegal until 2009.    They

acknowledge, however, that the Indictment alleges that they submitted the 2011

Cost Reports in 2013, well after the statutory change, but they nevertheless argue

that the Court should dismiss Counts Twelve and Thirteen because those counts

incorporate allegations of certain conduct that occurred prior to May 20, 2009. [Doc. 190 at 6].

Section 1301 provides that a crime occurs when someone "executes" or "attempts to execute" a scheme to defraud; it does not explicitly criminalize each act in furtherance thereof.  See United States v. De La Mata, 266 F.3d 1275, 1287-88 (11th Cir. 2001).  Holland and Moore argue that the submission of the 2011 Cost Reports cannot be the act amounting to the "execution" of any crime because those reports had no specific relationship to the Clinica contracts and did not create their own independent financial risk to the Government.  [Doc. 293 at 7].  They argue that the submission of the 2011 Cost Reports was, at worst, merely an act in furtherance of the scheme, operating only to conceal the alleged act(s) in execution.  [Id. at 6].  This argument is not suited to a motion to dismiss.

A single scheme can be executed a number of times, and a defendant may be charged in separate counts for each "execution" of the scheme to defraud.  See De La Mata, 266 F.3d at 1287.  Stated another way, "two transactions may have a common purpose but constitute separate executions of a scheme where each involves a new and independent obligation to be truthful."  Id. at 1288 (quoting United States v. Sirang, 70 F.3d 588, 595 (11th Cir. 1995)).  According to the

Eleventh Circuit, "each part of the scheme that creates a separate financial risk for the financial institution constitutes a separate execution." Id.

There is nothing on the face of the Indictment that requires dismissal of Counts Twelve or Thirteen. The Government has met the basic pleading requirements for these charges. Although the Indictment alleges a scheme dating back to 2000, the Government has also alleged that Holland and Moore executed the scheme more than four years after the § 1301 amendments went into effect when they submitted cost reports in August 2013 that contained an allegedly fraudulent misrepresentation concerning compliance with the AKS. It is for the jury to decide whether the submission of the two 2011 Cost Reports amounted to two executions of a scheme to defraud the United States. At the appropriate time, the jury will be instructed as to the controlling law on the issue. At this juncture, however, I see no basis to dismiss Counts Twelve and Thirteen on *ex post facto* grounds.

For the reasons stated, I **RECOMMEND** that the Motions to Dismiss Counts Twelve and Thirteen based on the Ex Post Facto Clause [Docs. 190, 208] be **DENIED**.

**D.     Motion to Dismiss the Government's "One Purpose" Theory of Prosecution [Docs. 264, 270, 282]**

Defendants next move to "dismiss" the Government's "one purpose theory of prosecution." [Doc. 264, 270, 282]. Despite being titled as a motion to dismiss, Defendants do not argue that any of the standard grounds for dismissal are present, i.e., that the allegations in the Indictment are legally deficient, fail to provide them with fair notice of the charges, or somehow create a double jeopardy problem. See Jordan, 582 F.3d at 1245. Rather, Defendants take issue with the legal premise, coined the "one purpose rule," that if one of the purposes of a payment to a service provider is to induce Medicaid or Medicare patient referrals, then the payment necessarily violates the AKS, even if there are other legitimate purposes for the payment. [Doc. 264 at 2-3]. Defendants contend that the facts of this case do not support a conviction based on the "one purpose rule" because here, "fair market value payments" were made "for bona fide services with perhaps the hope and expectation that referrals [would] flow from the relationship." [Id. at 4].

In presenting this argument via a pre-trial motion to dismiss, Defendants again disregard binding caselaw on the purpose of a motion to dismiss in criminal cases. It is not for the Court to pre-judge the evidence. Asking this Court to assume that all payments made were for "fair market value" or that "bona fide services" were provided is clearly improper. As discussed above, the Indictment

sufficiently alleges AKS violations; Defendants must await trial to contest those allegations.   To the extent Defendants make other arguments regarding their disagreement with the current state of the law or the statutory language, Defendants have provided no legal basis for the Court to dismiss any portion of the Indictment at this time.[4]

Accordingly, I **RECOMMEND** that the Motion to Dismiss the Government's "One Purpose" Theory of Prosecution [Docs. 264, 270, 282] be **DENIED.**

### E.   Motion to Dismiss Based on Abuse of the Grand Jury [Docs. 182, 200, 207].

Finally, Defendants move to dismiss the Indictment based on the prosecutors' alleged "abusive tactics" and vindictiveness.   [Docs. 182, 200, 207]. Defendants complain that the original indictment and first superseding indictment were obtained in the Southern District of Florida, despite being based on evidence and testimony gathered via grand juries in Georgia.   Defendants do not assert that

---

[4]   In their reply brief, Defendants stress the importance of having this issue resolved pre-trial, arguing that whether the "one purpose rule" is in play will impact their trial preparation as well as opening statements and other aspects of the trial.   [Doc. 310 at 4].   While that may be true, the fact remains that what Defendants are requesting is a pre-trial ruling on the sufficiency of the evidence, which is not appropriate under the Federal Rules of Criminal Procedure.   See Critzer, 951 F.2d at 307.

venue was improper in Florida; rather, they simply point out that this case has substantial ties to the Northern District of Georgia, and that Holland had to expend time and resources to have the case transferred to this district.  They also complain that after the case was transferred to this Court, the Government superseded the indictment for the second time, which added Moore and Cota as defendants and substantially changed the charges against Holland.  [Doc. 182 at 4-7].  Defendants argue that there was no proper purpose for the Government to initially bring this prosecution in Florida or to supersede the indictment after the case was transferred to this district, and they ask that all the charges against all of them be dismissed. [Id. at 9-13].

In response, the Government argues that this motion is meritless and that there was nothing improper about the prosecutors' decisions:

> The United States in obtaining the [Second Superseding Indictment] was motivated only by a desire to charge Defendant Holland for his allegedly felonious conduct.  The United States initially exercised its discretion to charge Defendant Holland in the Southern District of Florida.  Those charges were valid and properly venued in that district.  At the request of Defendant Holland, those charges were nonetheless transferred to this District.  Following the transfer of Defendant Holland's case, the United States elected to bring new charges against Defendant Holland and to charge Defendants Moore and Cota in [the same case as Holland] in an effort to streamline the charges and the prosecution of Defendants in this District.

> Obtaining the [Second Superseding Indictment] was a direct result of the change of forum and nothing more.

27

[Doc. 259 at 38-39].   The Government also points out that the (second superseding) Indictment contains no new factual allegations.  [Id. at 39].

The starting point for this analysis is to acknowledge that federal prosecutors have substantial discretion in their charging decisions.  See United States v. Goodwin, 457 U.S. 368, 381-82 (1982).  This is especially true for those decisions made pre-trial, where the initial charges may not reflect the extent to which a charged individual may be held criminally liable and may not reflect the universe of people involved in a crime; initial charges often need to be amended and new defendants added.  See id.  "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  United States v. Armstrong, 517 U.S. 456, 464 (1996).

The mere possibility that a prosecutor's actions may increase the possible punishment to the defendant is insufficient to show vindictiveness, because criminal prosecutions, by their very nature, are punitive.  See Goodwin, 457 U.S. at 372-73 ("The imposition of punishment is the very purpose of virtually all criminal proceedings.  The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a

28

legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity."). Thus, when asserting a claim that a prosecutor has acted vindictively during the pre-trial phase of the case, the burden is on the defendant to show, through objective evidence, a realistic likelihood that the prosecutor took the complained of action with the intent to punish the defendant for exercising a legal right. See id. at 372.

Here, Defendants have not met their burden. Defendants have failed to provide objective evidence that there was a reasonable likelihood that the prosecution team in this case was motivated by vindictiveness or a desire to punish Holland (or his co-defendants) for exercising a legal right. They have not shown that the Government has any motivation except to charge them for their alleged crimes.

The fact that the Government elected first to bring the case in Florida, where venue was proper, and then to supersede the indictment after Holland transferred the case to Georgia, does not show that the Government acted with a vindictive motive. See Goodwin, 457 U.S. at 368 (finding no prosecutorial vindictiveness where the prosecutor increased the severity of charges from misdemeanor to felony after the defendant demanded a jury trial on the misdemeanor charge); United States v. Barner, 441 F.3d 1310, 1316 (11th Cir. 2006) ("[P]roof of a prosecutorial

decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context."). As for Moore and Cota—who did not exercise any legal right such as moving to transfer venue—they have not shown any basis to bring a motion based on any abusive tactics or prosecutorial vindictiveness. The Government has offered a plausible, non-vindictive reason for its actions, and Defendants have not rebutted it.

Accordingly, for all the reasons stated, I **RECOMMEND** that the Motion to Dismiss Based on Abuse of the Grand Jury [Docs. 182, 200, 207] be **DENIED**.[5]

---

[5] An evidentiary hearing on these motions is not warranted, because Defendants have failed to present facts sufficient to create a reasonable doubt about the constitutionality of the prosecution. See United States v. Murray, No. 1:14-cr-338-TCB, 2015 WL 127877, at *6-7 (N.D. Ga. Jan. 8, 2015), aff'd, 659 F. App'x 1023 (11th Cir. 2016).

### III.   <u>CONCLUSION</u>

For the reasons stated, I **RECOMMEND** that all of the motions discussed herein [Docs. 182, 184, 185, 189, 190, 200, 202, 204, 206, 207, 208, 211, 213, 264, 270, 282] be **DENIED**.  **SO REPORTED AND RECOMMENDED**, this 6th day of September, 2018.


CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE